A99A0810, A99A1184. GENTRY et al. v. VOLKSWAGEN OF AMERICA, INC. et al.; and vice versa.
(521 SE2d 13)

BLACKBURN, Presiding Judge.

This is a product liability action. In Case No. A99A0810, Ralph Gentry and Sandra Gentry[1] appeal from the trial court's grant of partial summary judgment to Volkswagen[2] on the grounds that the National Traffic & Motor Vehicle Safety Act (the Safety Act) preempted the Gentrys' wrongful death claim for the death of their daughter Lori Gentry. In Case No. A99A1184, Volkswagen appeals, pursuant to interlocutory grant, the denial of its motion for summary judgment as to the Gentrys' claims of violations of the Racketeer Influenced & Corrupt Organizations Act (RICO). OCGA § 16-14-1 et seq.

On appeal of the grant of summary judgment, this Court applies a de novo review of the evidence to determine whether any question of material fact exists. Summary judgment is appropriate where the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A defendant meets this burden by showing the court that the documents, affidavits, depositions and other

---

[1] The Gentrys brought suit individually and as the parents of their deceased daughter Lori Gentry. Ralph Gentry also brought suit as the administrator of the estate of Lori Gentry.

[2] Volkswagen of America, Inc. and Volkswagen Aktiengesellschaft are defendants in the action.

evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Citation and punctuation omitted.) *Phelps v. BellSouth Advertising &c. Corp.*, 235 Ga. App. 147, 148 (508 SE2d 779) (1998). Additionally, this Court reviews de novo whether federal law preempts state law claims. See *Irving v. Mazda Motor Corp.*, 136 F3d 764 (11th Cir. 1998).

Viewed in this light, the record shows that the Gentrys are the parents of Lori Gentry, who was killed in an automobile crash in 1989 while riding in a 1981 Volkswagen Rabbit. The 1981 Rabbit was equipped with a fully passive restraint system, which consisted of a passive (automatic) two-point shoulder belt harness, a ramped seat and a deformable knee bolster (the VWRA system). The Rabbit did not have a lap belt but used the ramped seat and deformable knee bolster to restrain the lower part of a passenger's body. The Gentrys brought suit asserting claims of strict liability in tort, negligence, wrongful breach of warranty, fraud, failure to warn, misrepresentation and concealment, wilful or wanton acts and RICO violations.

### Case No. A99A0810

In Case No. A99A0810, the Gentrys appeal the trial court's determination that their common law claims are preempted by the Safety Act. The Gentrys assert that the specific design selected by Volkswagen for its fully passive restraint system (the VWRA system) was defective. Volkswagen argues that if the Gentrys are allowed to bring their state law claim, any liability would effectively eliminate the fully passive restraint system as a manufacturer's option under Motor Vehicle Safety Standard 208, thereby creating a conflict between the state law claim and the federal law.

1. State Law Claims.

An automobile manufacturer's compliance with federal regulations does not eliminate liability for design defects under Georgia law. *Doyle v. Volkswagenwerk Aktiengesellschaft*, 267 Ga. 574 (481 SE2d 518) (1997). Under the risk utility analysis applied to claims asserting design defects, compliance with applicable federal standards is simply one of the factors to consider. Id. at 577. Thus, Volkswagen's compliance with the requirements of the Safety Act does not bar the Gentrys from asserting a product liability claim under Georgia law. Whether that liability is preempted by federal law is the question on appeal.

2. Federal Preemption.

The Supremacy Clause of the United States Constitu-

tion provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U. S. Const. art. VI. Thus, state law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U. S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992). And, "common law liability may create a conflict with federal law, just as other types of state law can."

> Whether federal statutes or regulations preempt state law is "a question of congressional intent." . . . Congress — through federal laws and regulations — may effectively preempt state law in three ways: (1) express preemption; (2) field preemption (regulating the field so extensively that Congress clearly intends the subject area to be controlled only by federal law); and (3) implied (or conflict) preemption.

(Citations omitted.) *Irving*, supra at 767. See *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (2) (458 SE2d 95) (1995) (federal preemption of state law is "a question of Congressional intent").

Volkswagen argues only that the Gentrys' claims are impliedly preempted. Volkswagen's preemption argument is based on Motor Vehicle Safety Standard 208, which concerns occupant crash protection. When the 1981 Rabbit in which Gentry was riding was manufactured, Volkswagen was required to comply with one of three occupant protection options. 49 CFR § 571.208 S4.1.2.[3] As amended in 1974, Standard 208 allows a manufacturer to use a fully passive restraint system, in lieu of the seat belt systems otherwise required, to meet the performance requirements of S4. See 39 Fed. Reg. 3834 ("Option two exists, in fact, to accommodate the introduction of passive restraint systems like Volkswagen's which cannot meet all requirements of option one."). Volkswagen contends that the VWRA system in the 1981 Rabbit complied with this second option, 49 CFR § 571.208 S4.1.2.2, as amended.

Assuming, without deciding, compliance with the federal standards, we turn to Volkswagen's implied preemption argument. We view this argument with the knowledge that "[w]hen considering implied preemption, no presumption exists against preemption." *Irving*, supra at 769. Volkswagen argues that the Safety Act impliedly preempts the Gentrys' claims because to allow the claims would frustrate the intent of the Safety Act.

"The focus of the Safety Act is to reduce deaths and injuries from

---

[3] The three options are set out in 49 CFR § 571.208 S4.1.2.1-.3.

automotive accidents by promoting and enhancing safer automobile design." *Doyle,* 267 Ga. at 577. Standard 208 "specifies performance requirements for protection of vehicle occupants in crashes," and its purpose is "to reduce the number of deaths of vehicle occupants, and the severity of injuries by specifying crashworthiness requirements." 49 CFR § 571.208 S1, S2. As noted above, manufacturers could choose from three restraint options to comply with Standard 208, and one of the options was a fully passive restraint system.

(a) Liability based on design of restraint.

The fully passive restraint option allows manufacturers to design any fully passive restraint system so long as it meets the minimum performance requirements set forth in the regulations. Standard 208 does not mandate any particular fully passive restraint system. Compare S4.1.2.1 and S4.1.2.3 (specifying a seat belt assembly). Holding a manufacturer liable where a fully passive restraint system failed to exceed this minimum standard does not create a conflict, but instead dovetails with congressional intent. Manufacturers are encouraged to design fully passive restraint systems which offer greater occupant protection. And, a manufacturer can meet both the minimum federal standard and the state tort standard by designing its restraint system to meet the latter. See *Perry v. Mercedes Benz of North America,* 957 F2d 1257 (5th Cir. 1992).

Volkswagen, by characterizing the Gentrys' claims as a "failure to have a lap belt" claim, contends the claims are preempted. We agree that, to the extent that the Gentrys allege as a design defect a failure to include a lap belt, that claim is preempted by federal law. *Irving,* supra; *Doyle v. Volkswagenwerk Aktiengesellschaft,* Case No. 1:91-CV-1926A, N.D. Ga. (slip op. Sept. 29, 1998). However, our review of the record finds Volkswagen's characterization of the claim overly simplistic. The Gentrys' claims assert more than a defect based solely on the lack of a lap belt.

The Gentrys assert that the specific design selected by Volkswagen for its fully passive restraint system (the VWRA system) was defective. The Gentrys' claims are similar to those asserted in *Perry,* supra. In that case, Perry alleged that the air bag system, which complied with federal standards, was defective because it was not designed to deploy in the type of crash sustained. The court found that "[I]t would not conflict with Congress' objectives and methods if [Mercedes Benz] were found liable in tort for failing to design its air bags to perform in a manner that effectively exceeds the federal minimum standards." Id. at 1264.

We likewise conclude that it would not conflict with congressional intent if Volkswagen were found liable in tort for failing to design a passive restraint system that exceeded federal standards.

(b) Liability based on choice of design option.

Volkswagen relies on two recent federal court decisions in which a state law claim was preempted by the Safety Act. *Irving*, supra; *Doyle*, supra at 1:91-CV-1926A, N.D. Ga. (slip op. Sept. 29, 1998). However, in each of these cases the claim was preempted because it eliminated an option granted to manufacturers under the Safety Act. Liability was based on the restraint option selected by the manufacturer, not the design of the option as we have in this case. See, e.g., *Pokorny v. Ford Motor Co.*, 902 F2d 1116 (3rd Cir. 1990) (liability based on restraint option); *Taylor v. Gen. Motors Corp.*, 875 F2d 816 (11th Cir. 1989) (liability based on restraint option); *Alvarado v. Hyundai Motor Co.*, 908 SW2d 243 (Tex. App. 1995) (liability based on design); *Perry*, supra (liability based on design).

In *Doyle*, the restraint system in the Jetta was identical to the restraint system in the present case. It consisted of a passive two-point shoulder belt but no lap belt. The Jetta also used a knee bolster to restrain the lower part of the occupant's body. However, unlike the claims in this case, all of Doyle's claims were based solely upon the contention that the Jetta was defective because it did not include a lap belt as part of its front seat restraint system. Slip op. at p. 11. The district court found a conflict because the Doyles' claim sought to hold Volkswagen liable for a restraint system without a lap belt, a restraint system specifically authorized by Standard 208. The district court observed that

> [its] analysis would not apply to a claim that a particular design of seat belt was defective, but would merely preempt the type of claim plaintiffs present in this case, that is, that a restraint system is inherently defective because it contains no lap belt, or no air bag for that matter, because a restraint system without a lap belt or an air bag was an "option explicitly permitted by Congress." *Irving*, 136 F.3d at 769.

*Doyle*, supra at 1:91-CV-1926A, N.D. Ga. (slip op., p. 19, fn. 10).

In *Irving*, the safety belt system in the Mazda at issue had a passive two-point shoulder belt restraint and a manual lap belt. The Irvings argued that design was inherently defective. However, this *specific* restraint system option, two-point passive shoulder belt paired with a manual lap belt, was one of the three options available to manufacturers under Standard 208. Thus, the Irvings' claim was preempted because it challenged the option selected by Mazda. However, the Court noted that preemption would have been less clear if the claim alleged that the specific design selected by Mazda for its two-point system was defective. Id. at 769, fn. 4.

The judgment of the trial court is affirmed as to the Gentrys' claim the 1981 Rabbit was defective because it did not include a lap

belt and reversed as to other claims.

### *Case No. A99A1184*

In Case No. A99A1184, Volkswagen appeals the denial of its motion for summary judgment as to the Gentrys' RICO claims. For the reasons discussed below, we reverse.

> A private cause of action is created in favor of persons injured by violations of OCGA § 16-14-4, [which provides] "(a) It is unlawful for any person, *through a pattern of racketeering activity* or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property or personal property of any nature including money. (Emphasis added.)"
>
> Thus, the conduct prohibited by the act is the acquisition of (in this case) money through a "pattern of racketeering activity." The act further provides that "pattern" means engaging in at least two incidents of racketeering activity. OCGA § 16-14-3 (2). Finally, "racketeering activity" is defined to mean the commission of a crime in any of thirty-one specified categories of offenses (known as predicate offenses). OCGA § 16-14-3 (3).

*State of Ga. v. Shearson Lehman Bros.*, 188 Ga. App. 120, 121 (2) (372 SE2d 276) (1988). The predicate offenses which are alleged by the Gentrys are violations of OCGA § 16-10-20 and 18 USC §§ 1341 and 1343 (mail fraud and wire fraud). See OCGA § 16-14-3 (9) (A) (xv), (xxix). We address these predicate offenses in turn.

3. OCGA § 16-10-20 provides:

> A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, *in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state* shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

(Emphasis supplied.) The statute's application is limited to statements or representations made to state or local government about matters within its jurisdiction. Viewing the record favorably to the

Gentrys as the nonmovant, all of the allegations of fraud and misrepresentation concern statements and representations made to the National Highway Traffic Safety Administration (NHTSA), a federal agency, about compliance with NHTSA's regulations. Volkswagen's compliance with Standard 208 is a matter outside the jurisdiction of state or local government. The Gentrys have not presented any evidence that Volkswagen made any representations to any department or agency of state or local government.

The Gentrys erroneously rely on OCGA § 40-8-76.1, arguing that it requires all passenger vehicles to be equipped with passenger restraints which comply with Standard 208, and therefore passenger car manufacturers have made a representation to the Georgia Public Service Commission. We disagree. OCGA § 40-8-76.1 simply requires the passenger in the car to "buckle up."[4] It does not address any reports or statements to a state agency. There is no evidence of a violation of OCGA § 16-10-20, and the Gentrys' RICO claim cannot be predicated on this offense.

4. Neither can the Gentrys predicate a RICO claim on violations of 18 USC § 1341 or § 1343. To recover under a private cause of action in RICO, a plaintiff must show that the injury suffered flowed directly from the predicate offense. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802 (500 SE2d 591) (1998). More specifically, "when the alleged predicate act is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme." *Pelletier v. Zweifel*, 921 F2d 1465, 1499-1500 (11th Cir. 1991).[5]

The injuries to Lori Gentry flow only indirectly, not directly, from the alleged misrepresentations to NHTSA. The question is whether the injury was directly caused by any RICO violation, not whether the injury was reasonably foreseeable. *Bivens Gardens Office Bldg. v. Barnett Banks of Fla.*, 140 F3d 898, 908 (11th Cir. 1998). In this case, the alleged misrepresentations were directed to NHTSA, not Lori Gentry. Additionally, there is no evidence that Lori Gentry relied on the misrepresentations as she was not the consumer who purchased the car. "Although [Lori Gentry] may not have been injured but for the misrepresentations, it is clear those misrepresentations were not the proximate cause of [her] injuries." *Maddox*,

---

[4] OCGA § 40-8-76.1 (b) states, "[e]ach occupant of the front seat of a passenger vehicle shall, while such passenger vehicle is being operated on a public road, street, or highway of this state, be restrained by a seat safety belt approved under Federal Motor Vehicle Safety Standard 208."

[5] Because the Georgia RICO act is modeled upon the federal RICO statute, we look to federal authority. See *Maddox*, supra.

supra at 806. The Gentrys lack standing to pursue a RICO claim based on those misrepresentations. *Johnson Enterprises v. FPL Group*, 162 F3d 1290, 1318 (11th Cir. 1998).

The trial court's denial of Volkwagen's motion for summary judgment on the Gentrys' RICO claims is reversed.

*Judgment affirmed in part and reversed in part in Case No. A99A0810. Judgment reversed in Case No. A99A1184. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 30, 1999.

*Pope, McGlamry, Kilpatrick & Morrison, Charles N. Pope, Paul Kilpatrick, Jr., R. Timothy Morrison, William J. Cornwell, Wade H. Tomlinson III, Swift, Currie, McGhee & Hiers, W. Ray Persons, James E. Carter*, for appellants.

*Welch, Spell, Reemsnyder & Pless, Ronald D. Reemsnyder, Lisa K. Whitfield, Hezekiah Sistrunk, Jr.*, for appellees.