## A00A2550. KODADEK et al. v. LIEBERMAN et al.

(545 SE2d 25)

MIKELL, Judge.

While Dr. Richard Lieberman was suturing a blood vessel that began to bleed during young Ryan Kodadek's tonsillectomy, the needle broke. A portion of the needle lodged in Ryan's tonsil fossa, or the opening through which the tonsil was removed. The bleeding increased when Dr. Lieberman began to probe for the needle, so he elected not to retrieve it. Instead, he x-rayed the area, determined that the needle did not pose a danger to Ryan, and completed the surgery.

Dr. Lieberman immediately wished to discuss the incident with Ryan's mother, Diana Kodadek. A meeting was arranged by Donna Bryan, the Director of Perioperative Services for HCA Health Services of Georgia, Inc. d/b/a Columbia Northlake Regional Medical Center, where the surgery was performed. During the meeting, which nurse Bryan attended, Dr. Lieberman testified that he informed Mrs. Kodadek that a "small portion" of the needle remained in Ryan's throat. He recommended that Ryan refrain from physical activity and advised that the family remain in town, instead of taking a planned extended vacation, so that Dr. Lieberman could monitor his condition. He indicated that if Mrs. Kodadek insisted on taking a trip, that upon their return, he would perform a CT scan and remove the needle. Mrs. Kodadek's recollection of this meeting differed substantially from Dr. Lieberman's. She claimed he told her that the needle was tiny, would never need to be removed, and the "biggest problem" it would ever cause Ryan would be "beeping going through [airport] security" and that this type of occurrence happens "all the time." Mrs. Kodadek leveled similar allegations against nurse Bryan.

Ryan was discharged and saw Dr. Lieberman for a follow-up visit two days later. Dr. Lieberman testified that he reiterated his concerns about Ryan leaving town, but the Kodadeks indicated they had "family, medical people in Chicago" who could care for Ryan.

The Kodadeks took their scheduled trip. Mr. and Mrs. Kodadek returned to Georgia, leaving Ryan in Chicago in his grandmother's care. There, one month after the surgery, Ryan began experiencing pain in his throat. He presented to a physician, who recommended surgical removal of the needle. His parents flew to Chicago to be by his side. The surgery proceeded uneventfully, and, after one follow-up visit to the surgeon, Ryan was discharged from medical care. He suffered no permanent injury.

Ryan's parents, David and Diana Kodadek, individually and on Ryan's behalf, sued Dr. Lieberman, the hospital, and the operating room nurses, Lin Stennes and Faith Yurman, initially asserting

claims of negligence and fraud. An investigation revealed that Yurman had inadvertently handed Dr. Lieberman a needle thinner than the one he had requested. Plaintiffs claimed that Dr. Lieberman violated the applicable standard of care by, inter alia, failing to extract the needle from Ryan's throat, misrepresenting to Mrs. Kodadek that it was medically safe to leave it there, and misrepresenting to her the size of the needle. In his operative note, Dr. Lieberman estimated the portion of the needle that remained in Ryan's throat at 0.25 inch, or 0.635 centimeter. The portion removed actually measured 1.6 centimeters. Plaintiffs also claimed Dr. Lieberman's misrepresentations constituted fraud.

Plaintiffs alleged that the hospital and nurses fraudulently attempted to conceal the incident by failing to document it in the patient's chart, and that Bryan made false statements about the occurrence during the meeting with Dr. Lieberman. Plaintiffs sought damages to recover for Ryan's pain and suffering and medical expenses as well as funds expended to fly the family to Chicago for the surgery. Plaintiffs also contended that "they lost the opportunity to have an enjoyable summer" and that they suffered severe emotional distress and mental anguish surrounding the Chicago surgery. They sought punitive damages against the hospital.

Plaintiffs later dismissed the nurses from the action. Finally, they amended their complaint to assert claims of breach of public and private duty, breach of fiduciary duty and constructive fraud, and to demand recovery of $17,303.36 in special damages.

Summary judgment was granted to the hospital on plaintiffs' claim that the nurses violated a public duty. Summary judgment was also granted on the issue of punitive damages, with the exception of whether Bryan's alleged misrepresentations evidenced a conscious disregard for the consequences.

The case proceeded to trial. The jury returned a verdict exonerating Dr. Lieberman. The jury also found for the defendants on Mr. and Mrs. Kodadek's claims brought in their individual capacities. However, the jury found in favor of Ryan Kodadek against the hospital, awarding him $22,100 in compensatory damages and $16,910.24 in punitive damages. The trial court granted the hospital's motion for judgment notwithstanding the verdict as to the punitive damages award. Plaintiffs moved for a new trial on all claims except the award of compensatory damages to Ryan Kodadek. That judgment has been satisfied. Plaintiffs' motion for new trial was denied, and this appeal followed. We affirm.

1. Plaintiffs contend that the trial court erred in charging the jury on actual fraud as well as constructive fraud and breach of fiduciary duty. They maintain that the charges were inconsistent and confused the jury. We disagree.

Actual fraud requires proof of five elements: a false representation, scienter, intent to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff, and damages.[1]

Actual fraud consists of any kind of artifice by which another is deceived. Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another. OCGA § 23-2-51 (b).[2]

In the case sub judice, Mrs. Kodadek testified that Dr. Lieberman affirmatively misrepresented to her the size of the needle that remained in Ryan's throat and that she relied to her detriment on that representation. Further, the testimony of plaintiffs' nursing expert gave rise to an inference that nurses Stennes and Yurman fraudulently misstated the needle count in the intraoperative report. This evidence warranted a charge on actual fraud.

Additional evidence necessitated a charge on constructive fraud. Mrs. Kodadek testified that Bryan told her that the needle in Ryan's throat was "so small you can hardly see it. You need a microscope." However, the evidence established that Bryan had been summoned to the operating room after the needle broke and was unaware of the size of the portion that remained in Ryan's throat at the time she spoke with Mrs. Kodadek. Accordingly, the trial court was correct in charging the jury on both actual and constructive fraud. In any event, any error in this regard was self-induced, as plaintiffs refused to withdraw their claim of actual fraud.[3]

*Dent v. Mem. Hosp. of Adel*,[4] upon which plaintiffs rely in support of their claim, is inapposite. In that case, the parents of a baby who died in the hospital while hooked up to an apnea monitor sued the hospital, asserting theories of both professional and ordinary negligence. The judge instructed the jury that " 'if you find from the evidence in this case that the defendants did not commit any acts of professional negligence or malpractice, a verdict in the plaintiffs' favor would be unlawful.' "[5] The jury returned a defense verdict. In revers-

---

[1] *ComSouth Teleservices v. Liggett*, 243 Ga. App. 446, 449 (3) (531 SE2d 190) (2000).

[2] (Citation and punctuation omitted.) *Smith v. Wilfong*, 218 Ga. App. 503, 507 (462 SE2d 163) (1995). See also *Vickers v. Roadway Express*, 210 Ga. App. 78, 79 (2) (435 SE2d 253) (1993).

[3] See *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 347 (2) (a) (537 SE2d 397) (2000) ("Error, if any, was self-induced and cannot be complained of on appeal.").

[4] 270 Ga. 316 (509 SE2d 908) (1998).

[5] Id. at 317.

ing, the Supreme Court ruled that the challenged charge conflicted with the instructions on ordinary negligence and might have misled the jury into believing that it could not return a plaintiffs' verdict based upon ordinary negligence.[6]

The error in *Dent* did not occur in the case sub judice. The court correctly charged the jury on the elements necessary to prove actual fraud, breach of fiduciary duty, and constructive fraud. The court charged the jury that "[m]ere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action."[7] While plaintiffs complain that this language was an erroneous instruction on the law applicable to breach of fiduciary duty, they quote the charge out of context. The language was immediately preceded by the instruction that "willful misrepresentation of material fact made to induce another to act, upon which such person acts to his injury, will give him a right of action." The judge then explained to the jury that knowledge of the falsehood was an intentional element of the tort of deceit, but that a "fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood. . . ." The court also charged the jury: "Where a person sustains toward another a relation of trust and confidence, his silence when he should speak or his failure to disclose what he ought to disclose is as much a fraud in law as an actual affirmative false representation."

Thus, the evidence does not support plaintiffs' assertion that the jury was instructed that in order to find a breach of fiduciary duty, the jury must find that defendants intentionally made a false statement. "It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error."[8] The charge in the instant case, considered as a whole, was accurate, adjusted to the evidence, and did not mislead the jury. Accordingly, this enumeration is meritless.

2. Plaintiffs next assert that the trial court erred in granting j.n.o.v. on the issue of punitive damages. We disagree.

In reviewing the grant of j.n.o.v., the appellate court views the evidence in the light most favorable to the party who obtained the jury verdict, and the standard of review is whether there is any evidence to support the verdict.[9] However, the appellate inquiry does not end here.

---

[6] Id. at 317-318.

[7] OCGA § 51-6-2 (a).

[8] (Citation and punctuation omitted.) *Clemons v. Atlanta Neurological Institute*, 192 Ga. App. 399, 401 (1) (b) (384 SE2d 881) (1989).

[9] *Peters v. Hyatt Legal Svcs.*, 220 Ga. App. 398, 400 (1) (b) (469 SE2d 481) (1996).

The issue on appeal remains whether or not there is any evidence sufficient *under the applicable standard*. In the case of punitive damages, the standard of review must also be applied in conjunction with the requirement under OCGA § 51-12-5.1 (b) that the evidence must be clear and convincing.[10]

In other words, it is our appellate responsibility to determine whether there is any evidence to support the jury's determination that the evidence of fraud or breach of fiduciary duty was clear and convincing. In this regard, "it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage."[11]

We conclude that the trial court did not err in granting j.n.o.v. to the defense on the issue of punitive damages. Mrs. Kodadek's testimony that Bryan stated that the needle remaining in Ryan's throat was "microscopic" in size and that this occurrence was common is not "clear and convincing," given that it is contradicted by the testimony of Bryan and Dr. Lieberman, as well as Dr. Lieberman's notes of the conversation. Bryan and Dr. Lieberman both testified that he explained to Mrs. Kodadek that a "small portion" of the needle lodged in Ryan's throat. Dr. Lieberman further testified that neither he nor Bryan stated to Mrs. Kodadek that "this happens all the time." Finally, he testified that he instructed Mrs. Kodadek that Ryan should refrain from physical activity and not travel so that Dr. Lieberman could supervise his medical care.

Nor does the evidence that the operating room nurses violated the standard of care by misstating the needle count in the intraoperative report justify the award of punitive damages, given the fact that Mrs. Kodadek was immediately informed of the incident and that it was reported in Dr. Lieberman's operative note. Accordingly, having reviewed the record and transcript, we do not find sufficient evidence that the hospital or its employees showed the requisite degree of wilful misconduct, malice, wantonness, or oppression or otherwise evinced that entire want of care as to authorize the imposition of punitive damages under OCGA § 51-12-5.1 (b). Accordingly, we affirm the trial court's grant of j.n.o.v. on this issue.[12]

3. Next, plaintiffs complain that the trial court erred in refusing

---

[10] (Punctuation omitted; emphasis supplied.) *Uniroyal Goodrich Tire Co. v. Ford*, 218 Ga. App. 248, 255 (3), n. 2 (461 SE2d 877) (1995), aff'd in part and rev'd in part, *Ford v. Uniroyal Goodrich Tire Co.*, 267 Ga. 226 (476 SE2d 565) (1996).

[11] (Citation and punctuation omitted.) *Tri-County Investment Group v. Southern States*, 231 Ga. App. 632, 638 (4) (b) (500 SE2d 22) (1998).

[12] See *Brown v. DeKalb Med. Center*, 225 Ga. App. 4, 7 (2) (482 SE2d 511) (1997); *Roseberry v. Brooks*, 218 Ga. App. 202, 209-210 (4) (461 SE2d 262) (1995).

to grant them a new trial on the basis of juror misconduct. In this regard, plaintiffs' counsel offered his own affidavit, relating the following: After the trial had concluded, counsel was approached in a restaurant by a juror. Counsel averred that this juror "was rather insistent that my clients should not appeal the verdict." She "represented that the jurors had an ongoing bet with respect to the outcome of the trial [and] that she had a friend or boyfriend that works for . . . the firm that represented [the hospital]." An attorney who overheard this conversation submitted an affidavit that confirmed counsel's recollection.

Since the juror who made the statements to plaintiffs' counsel was not called to testify at the hearing on the motion for new trial, her statements constituted hearsay and could not authorize the grant of a new trial.[13] "[H]earsay testimony is inadmissible and wholly without probative value unless it comes within a recognized exception to the hearsay rule, which this did not."[14] Therefore, the trial court did not abuse her discretion in refusing to grant the motion on this ground.

4. Next, plaintiffs complain that the trial court erred in denying their motion for new trial on the basis of newly discovered evidence. This enumeration is meritless.

> The standard for granting a new trial on the basis of newly discovered evidence is well established. It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. All six requirements must be complied with to secure a new trial. Implicit in these six requirements is that the newly discovered evidence must be admissible as evidence.[15]

The "evidence" at issue is information taken from the Internet site of Columbia HCA/Healthcare Corporation, the parent company

---

[13] *Satterwhite v. State*, 235 Ga. App. 687, 688-689 (509 SE2d 97) (1998).

[14] *K-Mart Corp. v. Lovett*, 241 Ga. App. 26, 29 (4) (525 SE2d 751) (1999).

[15] (Citations omitted.) *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980). Accord *Collins v. Kiah*, 218 Ga. App. 484, 486 (2) (462 SE2d 158) (1995).

of the defendant hospital. Plaintiffs contend the information shows that the parent company owns the hospital; that the hospital misrepresented its true ownership; and that the trial court's denial of their motion to name the parent company as the proper party defendant harmed their ability to prove punitive damages because they were prohibited from introducing evidence of the parent company's greater "worldly circumstances." However, this argument is rendered moot by our affirmance in Division 2 of the trial court's grant of j.n.o.v. as to punitive damages.

Plaintiffs also claimed that based on the hospital's misrepresentation of its ownership, plaintiffs incorrectly relied on the policies and procedures of Northlake Regional Medical Center in attempting to prove negligence and fraud, as opposed to a national code of conduct applicable to all Columbia employees. The national code of conduct proffered by plaintiffs states that "[n]o one may falsify or inappropriately alter information in any record or document." We note that the effective date of this code of conduct is February 11, 1998. The surgery and subsequent events which form the basis of this litigation took place in 1996. Accordingly, this evidence would not have been admissible at trial because it is irrelevant to the policies in place at the time in question.

Furthermore, this evidence cannot be considered newly discovered because plaintiffs brought it to the court's attention prior to the conclusion of trial. Moreover, it appears that the material was printed by plaintiffs' counsel on November 9, 1998, over two months prior to trial.

Finally, in denying plaintiffs' motion for new trial on this ground, the court relied on the affidavit of an assistant vice-president of HCA Health Services of Georgia, Inc., who averred that at all relevant times, that entity owned and operated Northlake Regional Medical Center. "When a trial judge decides not to grant a motion for new trial [s]he becomes the trier of fact, and [her] discretion in refusing the motion will not be disturbed unless manifestly abused."[16] We find no abuse of discretion here and affirm the trial court's ruling.

5. Plaintiffs challenge the denial of their motion for new trial on the additional ground that the hospital misrepresented the availability of its chief executive officer ("CEO") as a witness at trial. Plaintiffs further maintain that the trial court erred in failing to instruct the jury that a negative presumption arose from the hospital's failure to produce the CEO. However, plaintiffs' enumeration of error in this regard states only that they were severely prejudiced by misrepresentations as to which entity owned the hospital. See Division 4. "As

---

[16] *Fugarino v. State*, 243 Ga. App. 268, 270 (2) (531 SE2d 187) (2000).

an enumeration of error cannot be enlarged by a brief to give appellate viability to an issue not contained in the original enumeration, this Court will not consider" plaintiffs' additional arguments.[17] In any event, in denying plaintiffs' motion for new trial, the court found that the hospital had not supplied incorrect information to plaintiffs concerning the CEO and that they were not harmed by the CEO's unavailability because his deposition was read into evidence. Having reviewed the record and transcript, this Court is not persuaded that the judge abused her discretion in so finding.

6. Plaintiffs' final enumeration of error asserts that the trial court erred in refusing to assess sanctions against the hospital. Plaintiffs' argument is premised upon its claims that the hospital misrepresented its ownership and attempted to conceal the whereabouts of its CEO. As we have resolved those claims against plaintiffs, this argument too must fail.

7. Although plaintiffs' brief violates Court of Appeals Rule 27 (c) (3) by providing inadequate citations to the voluminous record — 27 volumes — this Court declines Dr. Lieberman's request to dismiss this appeal and assess sanctions against the plaintiffs.[18]

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED JANUARY 19, 2001.

*Neal H. Howard, Joann Brown-Williams, William D. James,* for appellants.

*Long, Weinberg, Ansley & Wheeler, Alan M. Maxwell, Anna C. Palazzolo, Elaine W. Whitehurst,* for appellees.

---

[17] (Citation omitted.) *Rolleston v. Cherry,* 226 Ga. App. 750, 753 (1) (b) (487 SE2d 354) (1997).

[18] See *Poole v. Estfan,* 206 Ga. App. 510, 511 (1) (426 SE2d 61) (1992).