A01A2264. VOLKSWAGEN OF AMERICA, INC. et al. v. GENTRY et al.

(564 SE2d 733)

POPE, Presiding Judge.

On February 18, 1989, Lori Gentry, the 16-year-old daughter of Ralph and Sandra Gentry, was riding in the right front passenger seat of a 1981 Volkswagen Rabbit when it was struck by another car. The Rabbit was equipped with a fully passive restraint system consisting of a diagonal two-point shoulder belt, a ramped seat and a knee bolster (the "VWRA system"). The VWRA system had no lap belt; rather the ramped seat and the knee bolster were intended to restrain the lower body. This kind of system is known as a two-point passive restraint system.

Lori Gentry was using the VWRA system at the time of the collision and suffered serious liver injuries. She died approximately six hours after the collision. Her parents, individually and as administrators of their daughter's estate, filed a wrongful death action against Volkswagen of America, Inc. and Volkswagen AG.[1]

This is the second appearance of this case before this Court. In *Gentry v. Volkswagen of America*, 238 Ga. App. 785 (521 SE2d 13) (1999) (*"Gentry I"*), the Gentrys appealed the trial court's grant of summary judgment to Volkswagen on the ground that their state law claims were preempted by the National Traffic & Motor Vehicle Safety Act ("Federal Safety Act"). In *Gentry I*, this Court drew a distinction between a claim that the 1981 Rabbit was defective simply because it did not include a lap belt and claims that the specific design selected by Volkswagen for its passive restraint system was defective and held that the former claim was preempted by the Fed-

---

[1] Volkswagen of America and Volkswagen AG will be referred to collectively as "Volkswagen."

eral Safety Act because the use of a passive restraint system without a lap belt was one of three options expressly permitted under the Safety Act, and specifically under Federal Motor Vehicle Safety Standard 208 ("FMVSS 208"). 49 CFR § 571.208 S4.1.2.2. Thus, this Court held that "to the extent that the Gentrys allege as a design defect a failure to include a lap belt, that claim is preempted by federal law. [Cits.]" Id. at 788 (2) (a). We therefore affirmed the grant of summary judgment as to the Gentrys' claim that the 1981 Rabbit was defective "because it did not include a lap belt." Id. at 789 (2) (b).

Volkswagen argued that all of the Gentrys' claims were merely based upon the absence of a lap belt and thus that all their claims were preempted. But this Court found Volkswagen's characterization of the Gentrys' claim "overly simplistic" and noted that "[t]he Gentrys' claims assert more than a defect based solely on the [absence] of a lap belt." *Gentry I*, 238 Ga. App. at 788 (2) (a). We held in *Gentry I* then that the Gentrys had asserted claims for defects in the specific design selected by Volkswagen for its passive restraint system and that those claims were not precluded. This Court stated that "it would not conflict with congressional intent if Volkswagen were found liable in tort for failing to design a passive restraint system that exceeded federal standards." Id.

After *Gentry I*, the case proceeded to trial and the Gentrys were awarded $20,445.25 for reasonable medical and funeral expenses, $1 million for Lori Gentry's pain and suffering and $10 million for wrongful death. Volkswagen appeals.

1. Volkswagen first asserts that the trial court misapplied *Gentry I* by allowing the Gentrys' witnesses to argue that the design flaws in the Volkswagen restraint system could have been remedied by the addition of a lap belt. Volkswagen moved in limine prior to trial to restrict the Gentrys' ability to discuss the issue of pelvic restraint, and specifically the VWRA system's absence of a lap belt. The trial court denied that motion stating that *Gentry I* did not foreclose all discussion of lap belts or pelvic restraint. Rather, the trial court interpreted *Gentry I* as preempting only a claim that the VWRA system was defective solely because it did not have a lap belt. After reviewing the record and the presentation of evidence, we find no basis for reversal on this ground.

We find as an initial matter that the Gentrys did not pursue a preempted claim at trial. In other words, they did not argue that the VWRA system was defective because it was a passive two-point system. Rather, their theory was that the particular design of the VWRA system was defective, particularly for someone of Lori Gentry's size, for a number of reasons including the placement and angle of the shoulder strap and the placement of the knee bolster relative

to various positions of the car seat. This claim fell within the guidelines of *Gentry I* and the federal law of preemption.[2]

While the Gentrys' experts did opine that the addition of a lap belt would have improved the VWRA system's performance, they also pointed to other factors which would have corrected the alleged design flaws. And although the Gentrys' witnesses compared the performance of the VWRA system with that of other systems that include lap belts we find that Volkswagen invited such a comparison.

Volkswagen stated in the pre-trial order, for example, that its own testing confirmed that "the VWRA performed as well as manual three-point belts — if the manual three-point belt systems were used." Manual three-point systems include lap belts. And in his opening statement, Volkswagen's counsel stated that the National Highway Traffic Safety Administration ("NHTSA") had found that "overall, the VWRA performed equally to the three-point system."[3] In fact, Volkswagen argued that the VWRA system was more effective in reducing fatalities than manual three-point systems because the VWRA system did not require that a rider buckle himself up, but rather the system engaged automatically. Volkswagen's argument in this regard opened the door for a comparison of the VWRA system to other systems. Volkswagen could not be heard to argue that its system was as safe as a three-point lap belt system without affording the Gentrys the opportunity to argue that it was not.

In addition, we note that at least some of the evidence to which Volkswagen now objects was elicited by its own counsel on cross-examination. For example, William Muzzy, the Gentrys' engineering expert, testified during direct examination that a number of design changes in the VWRA system might have saved Lori Gentry's life. Included among these suggestions was the addition of a "lap strap." The Gentrys' counsel then addressed the other factors, but did not elicit further testimony regarding a lap belt. On cross-examination, however, Volkswagen's counsel elicited an opinion from Muzzy that all two-point passive restraint systems were defective and worked to elicit an opinion that the only way to make them nondefective was to add a lap belt. This cross-examination went beyond the Gentrys' position, venturing into the area prohibited by *Gentry I*. Volkswagen

---

[2] See, e.g., *King v. Ford Motor Co.*, 209 F3d 886 (6th Cir. 2000) (holding similar claims not preempted); *Moser v. Ford Motor Co.*, 2001 U. S. App. LEXIS 24171 (4th Cir.) (noting that similar claims would not be preempted, but holding that plaintiff had failed to produce sufficient evidence of such claims). Compare *Geier v. American Honda Motor Co.*, 529 U. S. 861 (120 SC 1913, 146 LE2d 914) (2000) (claim that airbags *required* in cars conflicted with purpose of FMVSS 208 and thus was preempted).

[3] Moreover, the evidence at trial showed that Volkswagen's own promotional literature equated the knee bar component of the VWRA system to a lap belt. A pre-1974 press release stated that the knee bar "functions as a lap belt is intended to function."

cannot claim error from evidence it elicited during its own cross-examination. See generally *Moody v. Dykes*, 269 Ga. 217, 220 (3) (496 SE2d 907) (1998) (a party cannot induce error and then benefit from it).

2. Volkswagen asserts that it was nevertheless entitled to a judgment notwithstanding the verdict ("j.n.o.v.") because the Gentrys' experts could not testify that defects, other than the absence of the lap belt, proximately caused Lori Gentry's death. Based upon our review of the arguments and the record, we find that the evidence when viewed as a whole presented a jury question of the issue of causation, and the trial court properly denied Volkswagen's motion for j.n.o.v.

3. Volkswagen further asserts that it was error for the trial court to allow plaintiffs' experts to testify as to their interpretation of FMVSS 208 and to allow the jury to determine what FMVSS 208 means. Volkswagen asserts that issue was a question of law for the court, and that the court was bound by NHTSA's interpretations of its own rules.

The jury is entitled to consider the issue of a manufacturer's compliance with federal standards or regulations in determining whether the product design was a reasonable one. *Doyle v. Volkswagenwerk Aktiengesellschaft*, 267 Ga. 574, 577 (481 SE2d 518) (1997). Volkswagen asserts that its VWRA system complied with FMVSS 208 because a two-point passive restraint system was one option sanctioned by the rule. It also asserts that NHTSA encouraged the use of the VWRA system due to the passive component, which reduced a passenger's ability to travel without restraint. Under *Gentry I*, the Gentrys could not contest Volkswagen's compliance with FMVSS 208 in that regard, nor could the trial judge allow the jury to place a different interpretation on that aspect of the rule.

But we must separate out Volkswagen's sanctioned choice of a two-point passive restraint system from the Gentrys' claims that the VWRA system, in particular, was defective because it did not provide protection to someone of Lori Gentry's size. That claim was allowed under *Gentry I* and placed at issue the reasonableness of Volkswagen's particular passive restraint system design. The jury, therefore, was allowed to consider whether Volkswagen complied with federal safety standards in that design. The testimony which Volkswagen cites in support of this argument addressed the permitted issues of the VWRA system's particular design, including the seat adjustment and the fit as it applied to Lori Gentry, and not the decision to pursue a passive two-point system. And, in fact, Volkswagen's counsel stated that he did not object to one of the expert's testifying to his understanding of federal safety requirements. Nor do we find that the testimony of Jack Martens regarding a conversation with

one of Volkswagen's design engineers raised a question of law for the jury to determine.

Volkswagen has not asserted that any of the Gentrys' experts misstated or misunderstood the standards about which they testified. Compare *Bammerlin v. Navistar Intl. Transp. Corp.*, 30 F3d 898, 900 (7th Cir. 1994) (where plaintiffs' experts misstated safety standards, judge had the obligation to define for the jury what the safety standards said). Nor has Volkswagen pointed to any specific NHTSA determination stating that the particular aspects of the VWRA system about which the experts testified were in compliance with the FMVSS 208, and which may have bound the jury.[4] Further, Volkswagen has not asserted that it requested jury instructions on the particular safety standards at issue or that such instructions were refused. In fact, the trial judge specifically charged the jurors that they could not find the VWRA system defective because it did not include a lap belt. Thus, the judge did not cede authority to the jurors for determining the meaning of FMVSS 208 with regard to the lap belt issue, but rather interpreted it for them.

Accordingly, we do not find that the jury was improperly allowed to determine the meaning of FMVSS 208 or other federal regulations, but rather was properly allowed to assess the reasonableness of Volkswagen's design in the context of those regulations.

4. Volkswagen next asserts that the trial court erroneously instructed the jury and allowed argument to the effect that it could find liability for a violation of the Federal Safety Act. In particular, Volkswagen asserts that the Gentrys' counsel was allowed "to persuade the jury to award enough damages to make VW recall and repair all VWRA-equipped vehicles."

In support of this argument, Volkswagen cites to testimony the Gentrys elicited on cross-examination that cars with the VWRA system were sold primarily in the United States and to testimony elicited on cross-examination regarding the cost and installation time needed to equip a VWRA system car with a lap belt or a thigh belt. Volkswagen objected to the admission of evidence regarding the cost of adding a manual lap belt at trial, and the parties fully briefed the issue for the trial court. The Gentrys proffered this evidence to show

---

[4] Our court rules require that briefs be supported by specific reference to the record or transcript, including record volume cites. Court of Appeals Rule 27 (c) (3) (i), (iii). The record in this case consists of 50 volumes and is in excess of 10,000 pages. It is not the function of this Court to cull that record on behalf of a party. *Bergmann v. McCullough*, 218 Ga. App. 353, 355-356 (3) (461 SE2d 544) (1995). "Our requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; . . . a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form." *Campbell v. Breedlove*, 244 Ga. App. 819, 821 (535 SE2d 308) (2000).

the alternatives available to Volkswagen at the time they chose to pursue a two-point passive restraint system, as a factor for the jury to consider in determining the reasonableness of the VWRA system design. See *Banks v. ICI Americas*, 264 Ga. 732, 736 (1) (450 SE2d 671) (1994). They also proffered this evidence in support of their claim for punitive damages. They argued that this evidence would be relevant to show modifications that the company could have made to the VWRA system if the jury found that Volkswagen was put on notice of potential problems with the VWRA system.

The admission of evidence is "committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Punctuation omitted.) *Cooper Tire &c. Co. v. Crosby*, 273 Ga. 454, 457 (2) (543 SE2d 21) (2001). Having reviewed the arguments, we find no abuse of discretion in the trial court's admission of this evidence. In addition, we do not find that this evidence injected a claim for a violation of federal regulations into the trial.

Volkswagen also points to the Gentrys' counsel's closing argument that the jury could help get the VWRA system off the road through its verdict. Pretermitting the propriety of this portion of the closing argument, Volkswagen waived its right to contest the argument on appeal because it failed to pose a contemporaneous objection. *Whitley v. Gwinnett County*, 221 Ga. App. 18, 24 (10) (470 SE2d 724) (1996).

Volkswagen further takes issue with the trial court's charge to the jury that the Gentrys were contending that Volkswagen violated the FMVSS 208 and the recall provisions of the Federal Safety Act. They assert that this instruction improperly allowed the jury to find liability based upon a violation of federal regulations. We disagree. The jury charge, when viewed as a whole, properly instructed the jury regarding the elements of the Gentrys' claims. See *Kodadek v. Lieberman*, 247 Ga. App. 606, 609 (1) (545 SE2d 25) (2001). We also note that the trial court did not give the portion of the Gentrys' requested charge stating that a violation of these rules and regulations amounted to negligence per se.

5. Volkswagen also argues that it was error for the trial court to allow the testimony of Lennart Fremling of the Swedish Road Safety Office. They assert that the Gentrys failed to give them adequate notice that they intended to call Fremling as an expert or that they intended to inject an issue of Swedish law into the trial. Volkswagen further asserts that Fremling's testimony was irrelevant and inconsistent with U. S. law.

We find no abuse of discretion in the trial court's admission and management of this testimony. Before allowing Fremling to testify, the trial judge heard his testimony outside the presence of the jury,

with cross-examination by Volkswagen's counsel. The trial judge also posed his own questions to Fremling and then ruled that Fremling could testify as a lay person regarding his prior dealings with Volkswagen. Throughout the course of Fremling's direct testimony, Volkswagen posed a number of objections as to foundation and on the ground the Gentrys' questions strayed into the realm of expert testimony. The trial court sustained the majority of these objections and cautioned the Gentrys' attorney from "getting much too close to what an opinion of an expert would render." We find that the trial court successfully limited Fremling's testimony to matters appropriate for a lay witness. And we do not agree with Volkswagen that his testimony improperly injected Swedish law into the trial.

In addition, we find no abuse of discretion in allowing Fremling's testimony for purposes of rebutting Volkswagen's argument that the VWRA system was not defective because it was approved and encouraged by NHTSA. In Georgia, a plaintiff may pursue a claim against an automobile manufacturer even if the automobile is in compliance with U. S. safety standards. *Doyle v. Volkswagenwerk Aktiengesellschaft*, 267 Ga. at 577. Fremling's testimony was relevant to show that another agency that was the functional equivalent of NHTSA had concerns regarding the safety of the VWRA system. The evidence was also relevant as to whether Volkswagen was placed on notice of safety concerns with the VWRA system prior to 1980.

6. Volkswagen next contends that the trial court erred in excluding nine exhibits that it contends proved the reasonableness of its design. We note at the outset Volkswagen has failed to identify where it even offered five of these exhibits (Exhibits 98, 99, 100, 666 and 667) into evidence or where the trial court ruled upon such an offer. Where there is no ruling from the trial court regarding the admission of evidence, there is nothing for us to review. *Garrett v. McDowell*, 242 Ga. App. 78 (527 SE2d 918) (2000).

The trial court excluded Volkswagen's Exhibit 48, a letter written by NHTSA's director, Joan Claybrook, on the ground of hearsay. Volkswagen asserts, however, that this letter falls into a hearsay rule exception covering documents from a legal investigation admitted to explain conduct and ascertain motives. OCGA § 24-3-2. But Volkswagen fails to explain how or why the letter falls into that exception. Accordingly, we find no abuse of discretion by the trial court in excluding that exhibit.

The record is ambiguous as to whether the remaining three exhibits — all NHTSA studies — were admitted at trial. The trial court initially ruled that the studies were admitted, but heard further argument on the issue without making any subsequent ruling. It appears, however, that the exhibits may not have been sent out with the jury at the close of trial. Even if these exhibits were not for-

mally admitted, we find no reversible error because Volkswagen was given the opportunity to elicit testimony regarding the findings from these studies.

7. Volkswagen also asserts error in the trial court's decision to exclude two studies conducted by its witness Ulrich Seiffert. Again, Volkswagen has failed to demonstrate where it offered one of these studies (Exhibit 104) into evidence, and therefore we cannot address Volkswagen's argument as it pertains to that document. The Gentrys objected to the other study on the ground of hearsay noting that Seiffert was not the only author, and the trial court sustained the objection. We find no abuse of discretion in this ruling. Nor do we find any harm as Volkswagen had the opportunity to question Seiffert directly on the studies.

8. Volkswagen also takes issue with the trial court's decision to allow evidence of other similar transactions.

> In product liability actions, evidence of other incidents involving the product is admissible, and relevant to the issues of notice of a defect and punitive damages, provided there is a showing of substantial similarity. Without a showing of substantial similarity, the evidence is irrelevant as a matter of law.

(Citations omitted.) *Ray v. Ford Motor Co.*, 237 Ga. App. 316, 317 (1) (514 SE2d 227) (1999). And we review the trial court's admission of such evidence under an abuse of discretion standard. *Cooper Tire &c. Co. v. Crosby*, 273 Ga. at 457 (2).

Here, the trial court reserved one day of trial to hear argument and testimony on the issue of other prior similar incidents. The Gentrys offered this evidence to show that Volkswagen was on notice of potential defects prior to Lori Gentry's accident. The judge subsequently ruled that only certain of the proffered incidents were sufficiently similar to the accident in this case and then allowed the use of such evidence on cross-examination only under very limited circumstances. In addition, he gave a limiting instruction to the jury on the use of this evidence. Volkswagen has not indicated where it took exception to this instruction or requested any additional instruction. Having reviewed the argument and the testimony, we cannot state that the trial court abused its discretion in admitting the evidence of these similar incidents. See *Mack Trucks v. Conkle*, 263 Ga. 539, 544 (3) (436 SE2d 635) (1993).

With regard to the separate Stow incident, which occurred after the Gentry accident, the trial court heard the pertinent testimony of Stephen Stow outside the presence of the jury and heard argument on the issue before allowing him to testify before the jury. The trial

judge found substantial similarity in that the Stow incident involved the same restraint system, a frontal collision as did the Gentry accident, and the same "mechanism of death" (although the part of the body injured was different). In each accident, the victim loaded, or hit, the shoulder strap, resulting in injuries to the torso. The evidence also showed that Stow's wife was somewhat close to Lori Gentry in size and also ended up on the floor of the car following the collision. This evidence was proffered, in part, to rebut Volkswagen's defense of misuse of the system because the evidence showed that the Stow victim was using the system correctly and nevertheless ended on the floor, with injuries to the torso. Based upon our review of the record we find no abuse of discretion in the admission of this testimony on this ground.

9. Volkswagen next assert a series of errors in the trial court's charge to the jury.

(a) Volkswagen asserts that the trial court failed to charge that Volkswagen could not be held liable for failing to equip the 1981 Rabbit with a three-point belt and cites two of its proposed charges. The trial court did in fact give one of the requested charges by instructing the jury that it could not find the VWRA system defective solely because it did not include a lap belt. The only portion of the charge omitted was a parenthetical "(three-point manual belt)" following the term lap belt. The second requested charge merely restated the same principle in a different manner. We find no error.

We also find no error in the trial court's failure to charge that the Gentrys had to offer proof of an alternative, safer design, practicable under the circumstances, as that charge was an incomplete statement of the law, addressing only one of the factors to be considered under the balancing test adopted by our Supreme Court in defective design cases. *Banks v. ICI Americas,* 264 Ga. at 734-735, 736, n. 6.

(b) Volkswagen next asserts that the trial court improperly charged the jury that the Gentrys were entitled to recover if it found the vehicle defective. It asserts that this charge improperly excluded the requirement that the jury must find proximate cause.

But "[i]t is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Punctuation and footnote omitted.) *Kodadek v. Lieberman,* 247 Ga. App. at 609 (1). The trial judge charged the jury that the Gentrys were required to prove three elements, including proximate cause and gave a thorough charge on what was required to find proximate cause. Accordingly, we find no error.

(c) Nor do we find erroneous the trial court's charge regarding Volkswagen's duty to warn because, when considered as a whole, the charge limits that duty to reasonably foreseeable dangers and to rea-

sonably foreseeable users. See, e.g., *Farmer v. Brannan Auto Parts*, 231 Ga. App. 353, 355 (1) (498 SE2d 583) (1998).

(d) Volkswagen asserts further error in the trial court's refusal to give its proposed charge on the issue of product alteration. We find no error because the trial court charged on misuse of the product and the consumer's "conscious decision not to use the product as it was originally manufactured and designed," which covered the substance of Volkswagen's proposed charge.

(e) Volkswagen has failed to demonstrate that it objected on the record to the trial court's pattern jury charge regarding the effect of a party's nonproduction of evidence. By failing to object to this charge, Volkswagen failed to preserve the issue for appellate review. *Smith v. Curtis*, 226 Ga. App. 470, 471 (1) (486 SE2d 699) (1997).

(f) We find no merit in Volkswagen's remaining objection to the jury charge on the ground that it improperly injected the issue of insurance into the trial. The charge as given accurately reflects the factors which the Supreme Court of Georgia listed for proper consideration in a product liability case. *Banks v. ICI Americas*, 264 Ga. at 734-735, 736, n. 6.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 28, 2002 —
RECONSIDERATION DENIED APRIL 12, 2002 — ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Welch, Spell, Reemsnyder, Pless & Davis, Ronald D. Reemsnyder, Laura M. Tate, King & Spalding, Byron Attridge, Chilton D. Varner, Amy M. Power*, for appellants.

*Pope, McGlamry, Kilpatrick & Morrison, Charles N. Pope, R. Timothy Morrison, Wade H. Tomlinson III, Cochran, Cherry, Givens, Smith & Sistrunk, Hezekiah Sistrunk, Jr., Carter & Tate, James E. Carter, Mark A. Tate*, for appellees.