656 So.2d 501 (1995)
Donald PETERSON and Brenda J. Eubanks, as Co-Personal Representatives of the Estate of Wendy A. Royal, deceased; and Brenda J. Eubanks, individually, Appellants,
v.
The MORTON F. PLANT HOSPITAL ASSOCIATION, INC., a Florida corporation; Mary C. Jancsar, R.N., and Katherine H. Stephens, C.N.M., Appellees.
No. 94-01208.
District Court of Appeal of Florida, Second District.
April 21, 1995.
Rehearing Denied June 28, 1995.
Jonathan L. Alpert, Catherine A. Kyres, and William J. Cook of Alpert, Josey & Hughes, P.A., Tampa, and John A. Shipley of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for appellants.
Susan W. Fox, James A. Martin, Jr., and Marie L. DeMarco of Macfarlane Ausley Ferguson & McMullen, Tampa, for appellees.
ALTENBERND, Judge.
The personal representatives of the estate of Wendy A. Royal appeal a judgment in a medical malpractice action in favor of Morton Plant Hospital and two of its employees. Because the trial court allowed the details of a settlement with a codefendant to become a *502 feature of the trial, we reverse and remand for a new trial.
Ms. Royal entered Morton Plant Hospital on December 15, 1990, for the delivery of her third child. She successfully gave birth to a daughter early in the morning. Shortly after noon, Ms. Royal was discovered in her room in a coma. She was pronounced dead at 5:18 p.m. the following day as a result of a ruptured aneurysm in the splenic artery.
Ms. Royal's personal representatives filed a wrongful death action for the benefit of the estate, Ms. Royal's three surviving children, and her mother. They sued the hospital and two of its employees: Mary C. Jancsar, a nurse, and Katherine H. Stephens, a nurse midwife. They also sued Dr. Robert H. Keller, a physician specializing in obstetrics and gynecology, who allegedly worked under contract for the hospital.
At the time of the pretrial conference in December 1993, Dr. Keller was still an active party in this lawsuit and was represented by separate counsel. A few days before the trial in February 1994, Dr. Keller settled with the plaintiffs. The settlement had not been judicially approved pursuant to section 768.25, Florida Statutes (1993), when the trial began. Thus, there was no written release or other settlement papers at that time. However, because the settlement was sufficiently final, no one appeared on behalf of Dr. Keller at the trial. At the beginning of the trial, the attorney representing the remaining defendants explained to the trial court:
It's my understanding that the doctor has, in fact, agreed to pay $250,000, which were his policy limits, and that he has been dismissed with prejudice from the case with no admission [of] liability, and that this is contingent upon the receipt of the $250,000. I don't know if it's been received or not.
The plaintiffs' counsel agreed that the matter had been settled, but pointed out that the trial court had not formally approved the settlement. He commented:
I can't imagine that the Court wouldn't approve it when it's the policy limits of the physician, but we do not have  we have not yet entered a voluntary dismissal with prejudice because this just happened very recently, just last week, and we haven't had time to cross all the T's and dot all the I's. And [the doctor's attorney] won't be here and the doctor won't be here. We just don't have it written down. In fact, one of my motions in limine is that we not mention settlement with the doctor.
The trial court denied the plaintiffs' motion in limine, and the $250,000 settlement was disclosed to the jury during the trial. During closing argument, defense counsel relied on this evidence to argue:
Four, they have already received or will receive funds from Dr. Keller. When you couple that with the amount that they've received or are receiving from the government, it more than equals the amount of money [the plaintiffs' attorney] has asked you for for care and services. More, greater than.
The trial court then instructed the jury over the plaintiffs' objection:
[I]n this case, Dr. Keller settled with the plaintiff for $250,000. The hospital is not responsible for any negligence you may find by him. You may still assess a percentage of the responsibility to him despite this resolution. Further, you're not to consider whether insurance is involved in that.
Thereafter, the jury returned a verdict in favor of the hospital and its two nurses.
The trial court was persuaded to treat the settlement with Dr. Keller in this manner because of the supreme court's recent decision in Dosdourian v. Carsten, 624 So.2d 241 (Fla. 1993), which prospectively outlawed the use of Mary Carter agreements.[1] The court ruled that Mary Carter agreements entered into prior to Dosdourian should be disclosed to the jury, and that the trial court has discretion not to disclose the amount of the *503 settlement if that would unfairly prejudice one of the parties.
Dr. Keller's settlement agreement with the plaintiffs was not a Mary Carter agreement. Dr. Keller may have remained a nominal party until the settlement was approved by the court, but he played no role in the trial.[2] No one has suggested that the settlement was improper or questionable in any manner. Except for the fact that it had not yet been reduced to writing, the settlement was the type of agreement that must not be revealed to the jury under sections 46.015 and 768.041, Florida Statutes (1991).
In many respects, the trial court allowed the defendants to treat Dr. Keller as both a party who had settled and as one who had not. If the defendants' special jury instruction is correct, and Dr. Keller had settled with the plaintiffs for $250,000 prior to trial, then sections 46.015 and 768.041 would militate against any disclosure of that fact. If he had not settled because of the lack of judicial approval, then he either should have been given notice and opportunity to appear at trial or, more logically, the option to obtain formal judicial approval of the settlement prior to trial. The disclosure of the amount of this settlement clearly prejudiced the plaintiffs in this case.[3]
Because this error requires a new trial, we do not need to reach the issues regarding the admissibility of evidence of Ms. Royal's receipt of welfare payments prior to her death and her children's receipt of social security death benefits subsequent to her death. The plaintiffs chose to argue that Ms. Royal received lesser treatment by the hospital because she was a welfare patient. The defendants maintain that the plaintiffs' argument either opened the door to testimony concerning the amount of these governmental benefits or that the issues were not preserved. Moreover, they argue that the benefits were relevant in a wrongful death case to establish damages for lost support. We are concerned that the admission of evidence describing the amounts of these benefits may have shifted to the jury a function that section 768.76, Florida Statutes (1991), allocates to the judge. See Gormley v. GTE Prods. Corp., 587 So.2d 455 (Fla. 1991). Because the issue was not well addressed during the first trial and trial tactics may differ in a subsequent trial, we decline to rule on the admissibility of this evidence at any future trial. Nevertheless, the trial court and the parties should carefully analyze the admissibility of evidence relating to Ms. Royal's receipt of welfare payments prior to her death and her children's receipt of social security death benefits subsequent to her death.
Reversed and remanded for a new trial consistent with this opinion.
DANAHY, A.C.J., and FULMER, J., concur.
NOTES
[1] See Ward v. Ochoa, 284 So.2d 385 (Fla. 1973); Booth v. Mary Carter Paint Co., 202 So.2d 8 (Fla. 2d DCA 1967).
[2] He was treated as a Fabre party. Indeed, footnote 3 in Fabre v. Marin, 623 So.2d 1182, 1186 (Fla. 1993), would appear to explain the method by which this settlement would be allocated in the event of a plaintiff's verdict.
[3] Although not an issue on appeal, we also note that the jury instruction informing the jury that the hospital was not responsible for Dr. Keller's negligence was based on case law that has since been overruled. See JFK Medical Center, Inc. v. Price, 647 So.2d 833 (Fla. 1994) (disapproving Jones v. Gulf Coast Newspapers, Inc., 595 So.2d 90 (Fla. 2d DCA), review denied, 602 So.2d 942 (Fla. 1992)); Koebler v. Kieffer, 621 So.2d 681 (Fla. 2d DCA 1993) (relying on Jones).