## A98A2159. RAY v. FORD MOTOR COMPANY.
### (514 SE2d 227)

POPE, Presiding Judge.

On October 2, 1992, Ann W. Ray drove her 1989 Ford Mustang up the incline of her driveway into her carport. The car's rear tires came to rest just outside the lip of the carport pavement. Ray testified that based upon her usual habit, she believes that she placed the gear shift in the "park" position, although she has no specific recollection of doing so. She removed her keys and walked around the rear of the car to the passenger side to remove her four-month-old grandson from his car seat. Ray then noticed that the Mustang appeared to be rolling backward. She tried to run around behind the car to the driver's side, intending to stop the car from rolling. However, the car knocked her down and then ran over her, pinning her underneath.

Eileen Muzio, a neighbor who witnessed the accident, came to Ray's assistance. Taking the keys from Ray, Muzio jumped in the car and attempted to move the vehicle off Ray, but the car would not start. When Muzio looked down at the gear shift, she noticed that it was in the "drive" position. She then moved the gear shift to "park" and was able to start the engine and drive the car away from Ray.

Ray asserted claims against Ford Motor Company for negligence, fraud, breach of warranty and strict liability. The thrust of Ray's claims was her contention that the 1989 Mustang suffered from a design defect in that it lacked an ignition/transmission interlock device, which prevents the removal of the ignition key unless the transmission is in the "park" position. After a five-day trial, the jury returned a verdict in favor of Ford, and Ray appeals.

On appeal, Ray lists six separate enumerations of error. However, her brief is divided into only two sections of argument in violation of Court of Appeals Rule 27 (c) (1), which requires that the sequence of arguments follow the order of the enumerations of error and that they be numbered accordingly. "Our requirements as to the form of appellate briefs were created, not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court." (Punctuation omitted.) *Bennett v. Moody,* 225 Ga. App. 95, 96 (483 SE2d 350) (1997). Despite this error, we will exercise "our discretion . . . to consider the [two] main arguments presented, to the degree that we discern the enumerated errors discussed. [Cits.]" (Footnote omitted.) *Thomas Financial Group v. Standard Chartered Bank,* 225 Ga. App.

879 (1) (485 SE2d 237) (1997). However, because Ray provides no citation of authority or argument relating to her first two enumerations, they are deemed abandoned under Court of Appeals Rule 27 (c) (2).

1. Ray first contends that the trial court erred in granting Ford's motion in limine to exclude evidence and expert testimony about a Ford database listing prior instances of inadvertent vehicle movement in cars lacking the ignition/transmission interlock device. Ray sought to introduce this evidence to demonstrate that Ford had notice of such incidents when it made the decision to omit the interlock device from the 1989 Mustang. The trial court granted Ford's motion in limine, however, stating that Ray had failed to provide enough information to allow the court to determine whether incidents in the database were substantially similar to Ray's accident.

> In product liability actions, evidence of other incidents involving the product is admissible, and relevant to the issues of notice of a defect and punitive damages, provided there is a showing of substantial similarity. [Cit.] Without a showing of substantial similarity, the evidence is irrelevant as a matter of law. [Cits.]

(Punctuation omitted.) *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 877 (1) (447 SE2d 302) (1994).

> The admission or exclusion of evidence is reviewed by an abuse of discretion standard. [Cit.] Questions of relevance are generally matters within the trial court's discretion, and it is not error to exclude evidence that is not related to an issue at trial. [Cit.]

*American Assn. of Cab Cos. v. Olukoya*, 233 Ga. App. 731, 733 (1) (505 SE2d 761) (1998). See also *Rose v. Figgie Intl.*, 229 Ga. App. 848, 850 (1) (495 SE2d 77) (1997) (a decision to exclude evidence of similar incidents is reviewed for abuse of the trial court's discretion).

Ray sought to introduce evidence of two separate groups of prior incidents drawn from the Ford database. Ray's expert compiled these groups by sifting and re-ordering the information from the database. The expert was prepared to testify that he had discovered one group consisting of 546 incidents of inadvertent vehicle movement with a number of common factors: (1) the key was out of the lock or could be withdrawn from the lock; (2) the engine was not on; (3) no mechanical factor affected the accident; and (4) the shifting mechanism was not located on the steering column. Ray offered no further specifics about any of the 546 incidents. She argues that these factors were sufficient to demonstrate that the 546 incidents were substantially

similar to Ray's accident because: (1) Ray had been able to remove her key from the Mustang; (2) the engine was not running; (3) her car had no mechanical problems that contributed to the accident; and (4) the Mustang had an automatic overdrive transmission, which included a floor-mounted gear shift. Ray also sought to introduce testimony regarding a group of 20,000 incidents of inadvertent vehicular movement, compiled without regard to the underlying circumstances of the incidents. She contends that this evidence was relevant to show the extent and seriousness of the problem.

In support of its motion to exclude this evidence, Ford submitted the affidavit of Lee C. Carr, a former Ford employee, whose job responsibilities included the compilation of the database. Carr stated that the database was actually five different databases compiled by Ford engineers and lawyers from a variety of sources, including consumer complaint and service records, attorneys, government officials, fleet operators, newspapers and consumer representatives. Additional information came from a hotline program Ford set up to solicit comments in response to an investigation by the National Highway Traffic Safety Administration (NHTSA). Thus, Ford argued that the information in the database was hearsay.

Carr's affidavit noted various problems with the database resulting from these sources and the method used to create the database. He noted that the incidents were not confined to any particular model or year and that some of the information dated back to the 1960s. Moreover, the information was encoded into the database by employees who had no personal knowledge of the events, but who were simply instructed to input the information from the various source documents into designated codes. The codes utilized were extremely broad, and any one designation could include a wide variety of fact patterns. If the source documents failed to contain certain information, it was entered as unknown or under multiple codes to indicate that several possibilities existed. The database also failed to take into account various underlying factors — such as whether the parking brake was engaged, whether the car was on level ground or an incline or whether the vehicle was unoccupied — because this information was unknown or missing from the source documents.

Further, Carr stated that the information in the database has not been verified, and at least some of the information is known to be inaccurate. Ford had also determined that the database contained a number of duplicate entries.

In *Gen. Motors Corp. v. Moseley*, 213 Ga. App. at 877-878, the plaintiffs sought to establish notice by referring to a number of prior lawsuits and deaths, which they claimed were similar to the defect at issue. However, they failed to provide any information regarding the incidents underlying the lawsuits. We found that the plaintiffs had

failed to establish the required similarity between the prior lawsuits and the accident at issue and that the evidence should not have been admitted. Id.

In this case, because Ray does not even argue that the group of 20,000 prior incidents has any similarity to her accident, she clearly has failed to meet the foundational requirements for admitting this evidence. While Ray did cite to four factors among the group of five hundred forty-six incidents that she claims are consistent with her accident, Ford introduced uncontroverted evidence that the information from which Ray's expert gleaned these factors was unreliable. In the absence of the underlying source documents or any other verification of the database, the trial judge lacked sufficient information to determine whether the incidents were substantially similar to Ray's accident. Therefore, we find no abuse of discretion in the trial court's decision to grant Ford's motion in limine.

Ray also contends that the trial judge erred in reaffirming its ruling on the motion in limine following the testimony of General Jerry Currie, head of the NHTSA. Currie testified that in 1988 the NHTSA amended its rules to require that ignition/transmission interlocking devices be installed on all cars. In explaining what led to the change, Currie stated that the evolution of the rule had been a 30-year process and discussed the materials NHTSA would have reviewed in making the 1988 amendment. Ray argues that this testimony opened the door to the admission of the prior incidents from Ford's database because Currie testified that NHTSA reviewed its own historical files before initiating the rule change. We disagree. Nothing in Currie's testimony alters the fact that Ray failed to establish the proper evidentiary foundation for the introduction of the prior incidents. Accordingly, the trial court did not abuse its discretion in reaffirming its ruling on the motion in limine.

2. Ray next asserts that the trial court's charge with respect to Ray's own negligence was erroneous. In the first instance she claims it was error for the court to give the pattern jury instructions on contributory and comparative negligence over her objection, because at trial she pursued only a claim for strict liability. Ray asserted claims for both strict liability and negligence in her complaint. In the pretrial order, however, Ray makes no mention of strict liability per se, but asserts only that she is entitled to damages based upon Ford's negligence. Moreover, Ray's counsel declined Ford's attorneys' suggestion during the charge conference that Ray dismiss her negligence claims and proceed only on her strict liability claim. Under these circumstances, the trial court was entitled to conclude that Ray had not given up her claims of negligence, and therefore, it was not error to charge the jury on contributory and comparative negligence.

Ray also argues that the judge's charge on the relationship

between plaintiff's negligence and her claim for strict liability improperly confused the jury. "It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Citations and punctuation omitted.) *Dent v. Mem. Hosp. of Adel*, 227 Ga. App. 801, 805 (1) (490 SE2d 509) (1997); *Jordan v. Santa Fe Engineering*, 198 Ga. App. 600, 602 (2) (402 SE2d 304) (1991).

The trial judge charged the jury that "under Georgia law, contributory negligence of the plaintiff is not a defense to a claim of strict liability for product caused harm." Moreover, at the joint suggestion of counsel, the judge agreed to preface his charge on contributory and comparative negligence by stating that it was applicable to the plaintiff's claim for negligent design. Then, after the judge brought the jury back into the courtroom to give an omitted charge, he also charged

> Members of the jury, I charge you that the claims of Mrs. Ray's negligence or contributory negligence is applicable only to the plaintiff's claim based on negligent design, which is one of the plaintiff's two claims, the other being a claim for strict liability for product caused harm to which her negligence or contributory negligence is not applicable with respect to the standard of care.

We find that when viewed as a whole the charge was not confusing or misleading. See generally *Dent v. Mem. Hosp. of Adel*, 227 Ga. App. at 805-806. Accordingly, the trial court's charge with regard to Ray's own negligence was not erroneous.

3. Further, Ray argues that the trial court erred in failing to recharge on these issues after the jury asked the judge, "What verdict does the law require in the event that both parties are considered to have equal liability?" Ray's attorney proposed that the trial court respond by stating,

> The answer to the question is dependent upon what is meant by, quote, equal liability, unquote. If what is meant is that you feel that the burden of proof has only been carried fifty percent, then the plaintiff has not carried her burden and the defendant is to prevail. If what is meant is that the negligence of the plaintiff and the defendant equally contributed to the accident on a proximate cause basis, then, one, the defendant is entitled to prevail on the plaintiff's claim for negligence; and two, the plaintiff is entitled to prevail on her claim for damages under her strict liability claim for product caused harm.

The judge declined to give the suggested charge and, instead, replied that "[t]he court has charged you on the law in this case, and you should rely on your recollection of the charges that were given to you."

We find that the trial court was correct in refusing to give Ray's requested charge. The proposed charge was confusing and failed to contain a complete, and therefore accurate, statement of the law. For example, Ray's proposed charge did not take into account that assumption of risk is a defense to strict liability. See *Deere & Co. v. Brooks*, 250 Ga. 517, 518-519 (1) (299 SE2d 704) (1983).

Nevertheless, we find that it was error for the judge to fail to clarify the law in response to the jury's question.

> It is well established that when the jury requests the court to re-charge them on any point, it is the duty of the court to do so. The necessity that the jury clearly understand the law in order to render a lawfully arrived-at verdict renders it imperative that pertinent points of law be repeated or clarified or both, to set the jury on the right course in the event of questions.

(Citations and punctuation omitted.) *Glisson v. Glisson*, 268 Ga. 164, 165 (1) (486 SE2d 167) (1997).

Despite the trial court's accurate instructions on comparative and contributory negligence, the question demonstrated the jury's lack of understanding as to how to apply these principles to Ray's claims.

> As a result of the jury's confusion, and the court's refusal to remove it and clarify the law by answering the question[ ], the jury may well have based its decision on an erroneous understanding and application of the principles of comparative negligence.

*Brown v. City of Fitzgerald*, 177 Ga. App. 859, 860 (1) (341 SE2d 476) (1986). Therefore, the judge had the responsibility to respond to the jury's question and to clarify the applicable law, either by repeating her earlier charge or by giving a clarifying charge. "Merely sending a message to the jury to consider the instructions previously given was insufficient under the circumstances." Id. at 861 (1).

Accordingly, we find that the trial court committed reversible error when it refused to re-instruct the jury as to the point of law raised by their question.

*Judgment reversed. Beasley, P. J., and Ruffin, J., concur.*

DECIDED MARCH 10, 1999 —
RECONSIDERATION DENIED MARCH 30, 1999 — 

*Glover & Davis, J. Littleton Glover, Jr.,* for appellant.
*Long, Weinberg, Ansley & Wheeler, Mary D. Owens, Matthew T. Allen, Frederick N. Sager, Jr.,* for appellee.