971 So.2d 854 (2007)
FORD MOTOR COMPANY, a foreign corporation, Appellant,
v.
Joan HALL-EDWARDS, as Personal Representative of the Estate of Lance Crossman Hall, and Lester Hall, survivor of Lance Crossman Hall, Appellees.
No. 3D06-1656.
District Court of Appeal of Florida, Third District.
November 7, 2007.
*855 Carlton Fields and Wendy F. Lumish and Jeffrey A. Cohen and Alina Alonso, Miami; Cabaniss Smith Toole & Wiggins and F. Rand Wallis, Maitland; Salas Ede Peterson & Lage and Henry Salas, South Miami, for appellant.
Denney & Barrett and Richard L. Denney and Lydia JoAnn Barrett, Oklahoma; Kimberly L. Boldt, Boca Raton; Bruce Kaster, Ocala; Gustavo Gutierrez; Richard M. Mogerman, Plantation, for appellees.
Before GERSTEN, C.J., and CORTIAS, J., and SCHWARTZ, Senior Judge.
*856 CORTIAS, Judge.
Appellant, Ford Motor Company ("Ford"), seeks review of a $60 million jury verdict awarded to the parents of Lance Crossman Hall ("Hall"), a passenger in a 1996 Ford Explorer involved in a rollover accident. Hall was ejected and killed after the driver of the Ford Explorer fell asleep and lost control of the vehicle. Plaintiff, Joan Hall-Edwards, as the personal representative of Hall's Estate, brought an action in the trial court against Ford alleging defects in the Explorer's handling and stability characteristics. The jury determined that Ford was liable for placing the Ford Explorer on the market with a defect relating to the design of the vehicle's stability and handling and that this was a legal cause of the accident. The jury awarded $30 million to Hall's mother, Joan Hall-Edwards, and $30 million to his father, Lester Hall.[1]
On appeal, Ford claims that the trial court committed reversible error by (1) allowing testimony and comment to the effect that Ford caused "hundreds" of injuries and deaths in other rollover accidents involving the Ford Explorer without requiring plaintiff to establish a substantial similarity between those accidents and the one involving Hall; (2) allowing testimony that Ford made subsequent design changes that, if made sooner, would have allegedly prevented Hall's death and "hundreds" of others; and (3) failing to issue a remittitur on the ground that the $30 million award to each parent was excessive and unrelated to the evidence. We agree that the trial court committed reversible error in permitting testimony referencing other rollover accidents involving the Ford Explorer without requiring a showing of substantial similarity between those accidents and Hall's. As such, we will limit our review to this issue.[2]
After reviewing the trial record, it is apparent that references made to other incidents involving Ford were not isolated in nature and, in fact, became a feature of the case. For example, during opening statement, plaintiff's counsel mentioned "hundreds of deaths" caused by the Ford Explorer. After objection from Ford, the trial court opined that, "certainly none of this would be admissible on a main case or [if] punitive damages [were] not being tried at [this] point, but once it's been opened to punitive damages, he is entitled to talk about those deaths."
Additionally, during the trial, plaintiff's counsel sought to elicit testimony referencing other Ford Explorer accidents in an effort to establish notice as well as Ford's knowledge of a defect. The following exchanges took place in the examination of Mr. Gilbert, an expert for the plaintiff:
[PLAINTIFF'S COUNSEL]: And have you been involved in those cases that are substantially similar to this case where you have an untripped roll?
[DEFENSE COUNSEL]: Objection, Your Honor. . . .
. . .
[PLAINTIFF'S COUNSEL]: Mr. Gilbert, on cross-examination, Mr. Wallis asked you about other Ford Explorer accidents you had investigated. You recall that, sir?
MR. GILBERT: Yes, sir.
[PLAINTIFF'S COUNSEL]: And you said, I think, many, something like that?

*857 MR. GILBERT: Right.
[PLAINTIFF'S COUNSEL]: Approximately, how many?
MR. GILBERT: Ford Explorer?
[PLAINTIFF'S COUNSEL]: Yes, sir.
MR. GILBERT: Sixty.
[PLAINTIFF'S COUNSEL]: Untripped roll?
MR. GILBERT: Untripped roll, maybe 45.
[DEFENSE COUNSEL]: Objection, it's speculation, move to strike.
THE COURT: Overruled
[DEFENSE COUNSEL]: Your Honor, also, I would object, failure to prove substantial similarity.
[PLAINTIFF'S COUNSEL]: I'll be glad to lay that. Were those substantially Äî let me ask you this; were those situations where there was a vehicle on a highway in which there was an untripped roll while the vehicle was in a yaw?
[DEFENSE COUNSEL]: Objection, failure to show substantial similarity.
THE COURT: Overruled, that's why this question is being asked.
MR. GILBERT: Those Äî those were untripped rollovers, the 45 would be classified as untripped rollovers.
[PLAINTIFF'S COUNSEL]: On the highway?
MR. GILBERT: Not all of them were on the highway; some of them may have had a Äî a tire in the dirt or something, but the accident dynamics showed that those vehicles were untripped.
. . .
The following took place during the examination of Dr. Renfroe, an expert for the plaintiff:
[PLAINTIFF'S COUNSEL]: Now, over the years, have you been involved in a number of other cases where the stability of the Explorer, and the handling problems of the Explorer, brought about an accident?
. . .
[PLAINTIFF'S COUNSEL]: Let's talk first about the rollover propensity of the vehicle, or its stability just from a rollover standpoint. . . . Over the years, have you been involved in cases where that was an issue, sir?
[DEFENSE COUNSEL]: Your Honor, I object and I have the same motion. This is now the sixth time that term was used.
THE COURT: Overruled. It's appropriate at this time regarding knowledge. I will allow it.
[PLAINTIFF'S COUNSEL]: Now, were there deaths and serious injuries in some of those cases?
DR. RENFROE: Yes.
[PLAINTIFF'S COUNSEL]: And did Ford Motor Company receive from you reports, and take your deposition about those cases?
DR. RENFROE: Many times, yes.
[PLAINTIFF'S COUNSEL]: And did they include the UN46?
DR. RENFROE: Yes, they did.
[PLAINTIFF'S COUNSEL]: And the UPN105, the vehicle in question in this case?
DR. RENFROE: Yes.
[PLAINTIFF'S COUNSEL]: Were there a number of those cases?
DR. RENFROE: Yes, there were.
[PLAINTIFF'S COUNSEL]: Can you give the court an idea of how many times you have told Ford Motor Company about this problem, sir?
DR. RENFROE: I would say 150 times.

*858 [PLAINTIFF'S COUNSEL]: And in each of those events when you told Ford Motor Company about it, were they there [sic] about a serious injury or death to an individual or individuals?
DR. RENFROE: Yes.
. . .
The following took place during the examination of Mr. Tandy, an expert for the defendant:
[PLAINTIFF'S COUNSEL]: Do you know in Explorer cases alone [involving] rollovers, injuries and deaths that you have been involved in well over a hundred?
MR. TANDY: Yes.
[PLAINTIFF'S COUNSEL]: You know of well over 200?
MR. TANDY: I can't say that I do. I have been involved in over a hundred.
During closing argument, plaintiff's counsel again mentioned that Ford "killed hundreds of people" and also discussed how Ford made $285 million by selling vehicles after their engineers suggested they fix it. Counsel suggested that this was "blood money" and that Ford "shouldn't be [allowed] to keep that money."
Although there is not a specific provision in the Florida Evidence Code directly pertaining to the admissibility of similar accident evidence, sections 90.401[3] and 90.403,[4] Florida Statutes (1997), are applicable. Charles W. Ehrhardt, Florida Evidence ß 411.2 (2007).
There are four required elements that must be satisfied prior to admitting similar accident evidence.[5]See Perret v. Seaboard Coast Line R.R., 299 So.2d 590, 592-94 (Fla.1974).
(1) Evidence of similar accidents may not be offered to prove negligence or culpability, but may be admissible to show the dangerous character of an instrumentality and to show the defendant's knowledge.[6]
(2) The similar accidents must pertain to the same type of appliance or equipment under substantially similar circumstances.[7]

*859 (3) The similar accident evidence must have a tendency to establish a dangerous condition at a specific place.
(4) The accident must not be too remote in time to the accident at issue, thereby causing it to lack sufficient probative value.
Id.; Charles W. Ehrhardt, Florida Evidence ß 411.2 (2007).
The burden of meeting this four-part test and laying a sufficient predicate to establish similarity between the two incidents falls on the party seeking admission of the prior accident evidence. See Stephenson v. Cobb, 763 So.2d 1195, 1196 (Fla. 4th DCA 2000). The admission of similar accident evidence is within the discretion of the trial court and will not be disturbed on appeal except for a showing of abuse of discretion. Stephenson, 763 So.2d at 1196; Lasar, 436 So.2d at 238. However, "[a] judge cannot simply `use his discretion to decide that despite a plain lack of substantial similarity in conditions he will, nevertheless, admit the evidence.'" Gen. Motors Corp. v. Porritt, 891 So.2d 1056, 1058 (Fla. 2d DCA 2004) (quoting State v. Arroyo, 422 So.2d 50, 53 (Fla. 3d DCA 1982)) (discussing the admission of a videotaped experiment when the conditions under which the experiment was performed were not shown to be substantially similar to the circumstances of the case). Moreover, failure to lay a sufficient predicate establishing substantial similarity between the accidents renders the evidence irrelevant as a matter of law. Mack Trucks, Inc. v. Conkle, 263 Ga. 539, 436 S.E.2d 635, 640 (1993); Stovall v. DaimlerChrysler Motors Corp., 270 Ga.App. 791, 608 S.E.2d 245, 247 (2004); Ray v. Ford Motor Co., 237 Ga.App. 316, 514 S.E.2d 227 (1999).
Here, the references to other accidents were not isolated. On the contrary, they were widespread throughout the trial and, at no time, did the plaintiff lay a sufficient foundation to establish substantial similarity between the evidence relating to other accidents and the accident at issue in this case. Plaintiff contends that the similar accident evidence is admissible solely because Ford waived bifurcation of the trial, thereby permitting the issue of punitive damages to be tried along with the main case. In fact, the trial court justified the admission of other accidents on the basis of using them to prove Ford's liability for punitive damages.
The trial court relied on Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242, 249 (Fla. 1st DCA 1984) and admitted evidence of other accidents in order to show that Ford, "intentionally took steps to cover the known danger in order to protect continued marketing of the product. . . ." However, reliance on Johns-Manville fails because the requisite showing of substantial similarity is not reduced or eliminated when the issue of punitive damages is involved. Johns-Manville dealt with establishing a legal basis for punitive damages by showing a manufacturer's knowledge that its product was inherently dangerous along with the continued marketing of the product without making feasible modifications to eliminate the danger. Id. at 249. The case did not address the requirements of establishing substantial similarity. Id. at 242. Moreover, we are aware of no case which, absent a showing of substantial similarity, has allowed reference to "other cases" simply because punitive damages were at issue. See Mack Trucks, Inc., 436 S.E.2d at 640 (admitting as relevant to the issues of notice and punitive damages evidence of frame cracks in other Mack tractor trailer trucks where the record indicated that the other cracks were substantially similar to the frame crack at issue, but not permitting the admission of frame cracks "caused by circumstances wholly different *860 from the one at issue"); see also Stovall, 608 S.E.2d at 247 (stating that evidence of substantially similar incidents is admissible in product liability cases and is relevant to the issues of notice of a defect and punitive damages); see also Volkswagen of Am., Inc., v. Gentry, 254 Ga.App. 888, 564 S.E.2d 733, 741 (2002).
In this case, the trial court did not require that plaintiff establish the predicate necessary to permit the admission of similar accident evidence. No precautions or measures were taken to ensure that the other accidents were not too remote in time or that the conditions of the accidents were similar. For example, the trial judge never inquired into the general characteristics of the other accidents. Based on the record before us, we are unable to determine whether the differences in condition were material or immaterial. See Ry. Express Agency, 227 So.2d at 873.
In Volkswagen, the Georgia Court of Appeals stated that, "evidence of other incidents involving the product is admissible, and relevant to the issues of notice of a defect and punitive damages, provided there is a showing of substantial similarity." Volkswagen, 564 S.E.2d at 741. The trial court devoted an entire day to hearing argument and testimony related to the other incidents. Id. The trial judge prohibited the admission of some of the proffered evidence because it was not sufficiently similar to the accident at issue. Id. For those accidents that were sufficiently similar, the trial judge permitted their use in limited circumstances and only on cross-examination. Id. Furthermore, the trial judge gave the jury a limiting instruction regarding the use of the similar accident evidence. Id.
Likewise, in Ray, the trial court determined that the plaintiff could not reference a number of prior incidents because she failed to lay the foundational requirements establishing substantial similarity. Ray, 514 S.E.2d at 231. The trial judge had not been provided with any documentation or verification of the referenced incidents and, therefore, could not properly determine if they were substantially similar to Ray's accident. Id. On appeal, the court affirmed the trial court's decision to exclude the similar accident evidence. Id.
Here, throughout the trial, numerous references were made to other cases without laying a foundation for substantial similarity. Moreover, this evidence improperly became a "feature of the trial." See Peterson v. Morton F. Plant Hosp. Assoc., 656 So.2d 501, 502-03 (Fla. 2d DCA 1995) (remanding for a new trial because the trial court permitted details of a settlement agreement with a codefendant to become a feature of the trial). Because no foundation was laid establishing a substantial similarity between Hall's accident and other accidents referenced by plaintiff throughout the trial, the trial court abused its discretion in admitting this evidence and the verdict must be set aside and the matter remanded for a new trial involving both liability and compensatory damages.
Reversed and remanded.
NOTES
[1] The jury also awarded $1.2 million for lost support and services, but the trial court vacated this award.
[2] Nevertheless, under the facts of this case, the admission of post-accident remedial measures was also improper and constitutes reversible error.
[3] Section 90.401, Florida Statutes (1997), states:

Relevant evidence is evidence tending to prove or disprove a material fact.
[4] Section 90.403, Florida Statutes (1997), states, in pertinent part:

Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence.
[5] The four criteria are applicable if the purpose of admitting the similar accident is to show notice or knowledge of a dangerous condition. Charles W. Ehrhardt, Florida Evidence ß 411.2 (2007); Warn Indus. v. Geist, 343 So.2d 44, 46 (Fla. 3d DCA 1977).
[6] Charles W. Ehrhardt, Florida Evidence ß 411.2 (2007); Jackson v. H.L. Bouton Co., 630 So.2d 1173, 1176 (Fla. 1st DCA 1994) (holding that no abuse of discretion occurred in admitting evidence regarding a lack of prior complaints to establish defendant's knowledge (or lack thereof) of a defect in the safety glasses that it produced or sold).
[7] Jackson, 630 So.2d at 1176; Lasar Mfg. Co. v. Bachanov, 436 So.2d 236, 238 (Fla. 3d DCA 1983) (holding that two prior complaints and the testimony from two witnesses who were injured by the same model meat grinder were admissible to rebut the notion that defendant had no notice of a defective condition of the grinder model at issue); Ry. Express Agency v. Fulmer, 227 So.2d 870, 873 (Fla.1969) (holding that plaintiff failed to establish substantial similarity between the conveyor involved in the prior accident and the conveyor at issue in his accident). The other accidents do not have to occur at an identical place and time, but the conditions should be similar enough to provide the requisite probative value. Charles W. Ehrhardt, Florida Evidence ß 411.2 (2007).