46 So.3d 1020 (2010)
Mark GODFREY and Nicholas Grace, Appellants/Cross-Appellees,
v.
PRECISION AIRMOTIVE CORPORATION, et al., Appellees/Cross-Appellants.
No. 5D07-4389.
District Court of Appeal of Florida, Fifth District.
September 10, 2010.
Rehearing Denied October 29, 2010.
*1021 Jeffrey E. Bigman, of Law Firm of Smith Hood Bigman, Daytona Beach, and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, and Arthur Alan Wolk, The Wolk Law Firm, Philadelphia, PA, for Appellants/Cross-Appellees.
Matthew J. Conigliaro and Stephanie Zimmerman of Carlton Fields, P.A., St. Petersburg, and Wendy F. Lumish, of Carlton Fields, P.A., Miami, for Appellees/Cross-Appellants Teledyne Continental Motors, Inc., and Teledyne Technologies, Incorporated.
No Appearance for other Appellees.
PER CURIAM.
Mark Godfrey and Nicholas Grace (the Plaintiffs) timely appeal an order granting defendants Teledyne Continental Motors, Inc., and Teledyne Technologies, Inc.'s (collectively Teledyne) motion for a new trial in the Plaintiffs' suit for damages suffered when the airplane they were in crashed allegedly as the result of a faulty carburetor. On cross-appeal, Teledyne also raises a number of issues. We need not address all issues raised, but agree with Teledyne that the trial court committed reversible error by allowing the Plaintiffs to introduce evidence of more than 100 problem occurrences involving other aircraft engines without a showing that the other incidents were caused by defects substantially similar to the defect that the Plaintiffs alleged here. These documents were purportedly offered solely to show *1022 that Teledyne was on notice of the carburetor defect that allegedly caused its engine to fail. Yet, most of the incidents involved a larger aircraft engine built by a competing manufacturer and using a different carburetor than the one Teledyne certified for use with the engine at issue in this case.
Generally, in this context, "evidence of the occurrence or non-occurrence of prior accidents is admissible only if it pertains to the use of the same type of appliance or equipment under substantially similar conditions." Frazier v. Otis Elevator Co., 645 So.2d 100, 101 (Fla. 3d DCA 1994) (citations omitted). Florida law places the burden on the proponent of this type of evidence to demonstrate "substantial similarity" before the evidence can be admitted. Ford Motor Co. v. Hall-Edwards, 971 So.2d 854, 860 (Fla. 3d DCA 2007), review denied, 984 So.2d 1250 (Fla. 2008). Teledyne filed a timely pretrial motion to bar the Plaintiffs from admitting any evidence of other accidents without making the required showing. In response, the trial court entered an order that accurately set forth the law in this area and required the Plaintiffs to make the required showing in writing. The Plaintiffs filed a written submission that failed, in our view, to make the required showing as to the majority of these incidents. Basically, the Plaintiffs relied upon testimony from one of their experts, who opined that the engine at issue in this case was similar to other engines, including engines from other manufacturers. The same expert testified to a list of carburetors that he opined to be similar in that they all share the defects alleged to exist in the carburetor that allegedly contributed to the engine failure in this case. That testimony, however, was not sufficient to show that the more than 100 incidents placed before the jury met the required test for substantial similarity.
In fact, even if all of the accidents had involved the same Teledyne engine, that showing, alone, would not have been sufficient to secure admission of evidence regarding all of the other accidents. For example, one of the effects of the defects alleged by the Plaintiffs is a build-up of carbon in the engine exhaust valve that can interfere with the engine's operation and, ultimately, cause the engine to fail (stop running during flight). The parties do not dispute, however, that there are other potential causes of carbon build-up inside an aircraft engine. For example, the Plaintiffs' expert conceded that failing to change the engine oil when specified can cause this same condition. Yet, all that is known about some of the supposedly similar accidents is that they involved engines with carbon build-up. That showing, alone, is clearly insufficient to meet the similarity requirement of Frazier because there is no way of knowing whether the build-up was caused by the same condition alleged as a defect in this case. An accident caused because of failure to change an engine's oil when requiredeven if it involved the same Teledyne engine type as the one at issue herewould not have put Teledyne on notice of the defects alleged in this case and would therefore have had no relevance to the matters at issue in this case.
Because the Plaintiffs' pre-trial showing was not sufficient to meet the Frazier similarity standard, the trial court erred in denying Teledyne's pre-trial motion on this issue. Given the volume of other accident evidence introduced in this case without a sufficient similarity showing, we cannot conclude that the error in admitting this evidence was harmless. Accordingly, a new trial is warranted.
*1023 For the benefit of the trial court and the parties in future proceedings, we note that we find no error in: (1) the trial court's entry of summary judgment in favor of Teledyne on the issue of punitive damages; (2) the trial court's failure to enter judgment in Teledyne's favor as to the Plaintiffs' negligent omission claim; or (3) the trial court's denial of Teledyne's other post-trial motions. We do note, however, that the jury instructions regarding the Plaintiffs' negligent omission claim were problematic. Basically, the Plaintiffs claimed that Teledyne had a duty to disclose known defects under various Federal Aviation Administration (FAA) regulations. The Plaintiffs are correct that a legal duty may arise from administrative regulations. McCain v. Florida Power Corp., 593 So.2d 500, 503 n. 2 (Fla.1992). The trial court properly rejected Teledyne's argument that the duty to disclose apparently created by these regulations cannot apply to them because the Plaintiffs alleged a defect with another manufacturer's carburetor, and not with Teledyne's engine. The problem with this argument is that Teledyne specified the carburetor that had to be used with its engine. And, the Plaintiffs' theory is that the defective carburetor caused the engine to fail during flight. We agree with the Plaintiffs, as did the trial judge, that if FAA regulations require an airplane engine manufacturer to report known engine defects to the public, this disclosure requirement would necessarily include a duty to disclose a known defect in a carburetor or other part certified by the engine manufacturer for use with the engine that will cause the engine itself to fail.
The problems with the jury instructions on this issue arose as the trial court allowed the Plaintiffs' theory to morph during trial from an affirmative misrepresentation theory to a negligent omission theory. Although we find no abuse of discretion, on this record, in allowing the Plaintiffs to basically amend their complaint to conform with the evidence, the parties ended up using standard instructions on affirmative misrepresentation that did not match the Plaintiffs' ultimate theory of liability. On remand, the Plaintiffs should be granted an opportunity to formally amend their complaint to match the theory presented to the jury. And, this opinion should not be read as barring any legal defenses that Teledyne may raise in response to the amended complaint, other than the one expressly rejected in this opinion.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.
LAWSON and COHEN, JJ., concur.
SAWAYA, J., dissents with opinion.
SAWAYA, J., dissenting.
I respectfully dissent. Three defendants remained in this case at the time of the trial and only two suffered adverse verdicts of liability and damages: Teledyne Continental Motors, Inc. and Teledyne Technologies (collectively Teledyne), which manufactured the motor that failed on the doomed aircraft, and Precision Airmotive Corporation (Precision), which manufactured the faulty carburetorthe only carburetor that could be used on the Teledyne motor. Precision settled with the plaintiffs after this appeal was filed, leaving Teledyne as the only other party. During the trial, the plaintiffs introduced a substantial amount of evidence, including a number of composite exhibits regarding prior accidents and incidents involving the Precision carburetor and the Teledyne motor. The prior accident evidence was presented to the jury for a very limited purpose: to establish that Teledyne was on notice that there were problems with its *1024 motor and that Precision was on notice that there were problems with its carburetor. The jury was given a specific instruction that read:
During the course of the case various SDRs [Service Difficulty Reports] and warranty reports were admitted at this trial for a limited purpose only. These documents are not admissible for the truth of the matters recorded in the document because the person who made this report is not here to testify.
In other words, you can [sic] may not conclude from the mere fact that certain events were recorded in these documents, either that the events truly occurred as they are described, or that they happened for the reason stated in the document.
These documents are being admitted solely for the purpose of showing that the report was made and that certain parties may have learned that the report was made and had notice of the alleged difficulty with the service, not for the truth of what was reported.
The majority reverses the verdict in favor of Teledyne, concluding that some of this evidence was erroneously admitted because the incidents in the reports were not substantially similar to the incident in the instant case. I do not believe admission of this evidence constitutes reversible error.
Although prior incidents must be substantially similar to the incident at issue if used to prove the existence of a dangerous condition, this requirement is relaxed if evidence of prior incidents is introduced only to establish notice of a potentially dangerous condition,[1] as it was in this instance. When prior accident evidence is used to prove notice, the evidence may pertain to the same type of product; if different models of the product are involved, the proponent must establish that they are substantially similar to the model at issue and malfunction under similar circumstances.[2] As the court explained in Emerson Electric Co. v. Garcia, 623 So.2d 523, 524 (Fla. 3d DCA 1993):
Evidence of the safety-history of a product is admissible where the evidence pertains to the use of the same type of appliance or equipment, and is based on use of the product under substantially similar conditions. Railway Express Agency, Inc. v. Fulmer, 227 So.2d 870 (Fla.1969); Nance v. Winn Dixie Stores, Inc., 436 So.2d 1075 (Fla. 3d DCA 1983), rev. denied, 447 So.2d 889 (Fla.1984); Lasar Mfg. Co. v. Bachanov, 436 So.2d 236 (Fla. 3d DCA *1025 1983); Warn Indus. v. Geist, 343 So.2d 44 (Fla. 3d DCA) cert. denied, 353 So.2d 680 (Fla.1977). The purpose of product safety-history history is to show the dangerous character of the product and the defendant's knowledge thereof. Railway Express Agency, Inc., 227 So.2d at 872 (citing Chambers v. Loftin, 67 So.2d 220 (Fla.1953)).
In order to admit such evidence, the trial court must make "at least a threshold determination" of substantial similarity. Hogan v. Gable, 30 So.3d 573, 575-76 (Fla. 1st DCA 2010). "The other accidents do not have to occur at an identical place and time, but the conditions should be similar enough to provide the requisite probative value." Ford Motor Co. v. Hall-Edwards, 971 So.2d 854, 858 n. 7 (Fla. 3d DCA 2007) (citing Charles W. Ehrhardt, Florida Evidence § 411.2 (2007)), review denied, 984 So.2d 1250 (Fla.2008). As the court explained in Lawrence v. Florida East Coast Railway Co., 346 So.2d 1012, 1015 (Fla. 1977), "[D]eterminations of whether a proper predicate of similarity exists should be left to the sound discretion of the trial judge."[3] If the plaintiff offers sufficient proof of substantial similarity and the defendant submits conflicting proof, the trial court has the discretion to determine admissibility based on the plaintiff's proof and allow the jury to determine the weight to give the evidence. "When there is sufficient similarity of conditions for the court to admit the evidence, the variations may be considered by the jury in determining the weight which they will give the evidence." Charles W. Ehrhardt, Florida Evidence § 411.2 (2010). Similarly, in Friddle v. Seaboard Coast Line Railroad Co., 306 So.2d 97 (Fla.1974), the Florida Supreme Court adopted the dissent in Seaboard Coast Line Railroad Co. v. Friddle, 290 So.2d 85 (Fla. 4th DCA 1974), which specifically stated:
The sufficiency of the showing of similarity is a matter resting primarily within the sound discretion of the trial judge. Moreover, the dissimilarities are matters going to the Weight rather than the Admissibility of the evidence are questions that a jury is capable of evaluating and assessing.
290 So.2d at 90 (citation omitted).
Much of the evidence the majority condemns consists of reports of prior accidents and incidents that do not involve Teledyne engines and do not involve the exact model carburetorthe MA-3SPA that failed in the instant case. Most of that evidence is contained in what the trial court labeled Exhibit 244-A and Exhibit 139, which are composite exhibits of numerous reports of carburetor failures. The carburetors in those reports involved the MA-4SPA and the MA4-5, which were manufactured by Precision. That evidence was introduced to establish a poor safety history of Precision's carburetors that were of the same type and to show that Precision was on notice that its carburetors, particularly its MA-3SPA, were defective. This evidence was especially important to the plaintiffs in order to establish a basis for their punitive damage claim against Precision, and the jury was made aware that the evidence did not involve Teledyne's motor. It is apparent that the parties understood this evidence to be directed against Precision as demonstrated by the fact that Teledyne filed its motion to exclude the prior accident evidence regarding its own motor and then simply joined in the motions filed by Precision. Moreover, when the trial court gave Precision and Teledyne the opportunity during trial to make specific objections *1026 regarding the similarity requirement so it could reconsider its ruling admitting the evidence, Precision said it would do so and Teledyne said nothing and did nothing. Now, in the instant proceedings after Precision settled with the plaintiffs and is no longer a party, Teledyne is actually attempting to utilize the evidence directed against Precision to extricate itself from the adverse verdict rendered against it.
Additionally, the expert for the plaintiffs testified during trial that all of these Precision model carburetors have substantially the same parts and mechanisms, worked the same, and were substantially similar. He further testified that the defects involved in the MA-3SPA were common to the other models installed on other engines and that notice of the defects in one model was notice of the same defects in the others. Although contrary expert evidence and opinions were presented in an attempt to prevent admission of this evidence, the trial court found that the threshold predicate of similarity was established by the testimony of the plaintiffs' experts and allowed the jury to resolve the conflicting evidence to determine what weight to give the reports of the prior failures of Precision's carburetors. Hence, the jury was fully aware of the fact that this evidence did not involve Teledyne's motor, and I do not believe that but for this evidence, the jury would have returned a different verdict as to Teledyne. See Nat'l Union Fire Ins. Co. v. Blackmon, 754 So.2d 840, 843 (Fla. 1st DCA 2000) ("[T]he test for harmful error in a civil case ... is `whether, but for such error, a different result may have been reached.'" (quoting Katos v. Cushing, 601 So.2d 612, 613 (Fla. 3d DCA 1992))); see also Hogan, 30 So.3d at 575 (same). If the trial court erred in admitting this evidence, it was harmless as to Teledyne.
The majority fails to mention that there was much evidence of substantially similar accidents and incidents involving Teledyne's motor. This evidence clearly establishes that Teledyne was on notice that there were problems with its motor. As the plaintiffs point out in their briefs, during a two-day evidentiary hearing and during trial, the trial court heard the testimony of the plaintiffs' expert and the defendants' experts regarding the substantial similarity of this evidence and appropriately exercised its discretion in finding that the threshold predicate of similarity had been established. The numerous reports contained in composite Exhibit 244-B, unlike Exhibit 244-A, involved reports on Cessna 150 planes with Teledyne's Continental O-200 engines and Precision's MA-3SPA carburetor. These SDRs complained variously of leaking intake valves, stuck valves, low compression due to heavy deposits of lead, and stuck valves due to carbon or lead build-up.
The plaintiffs also introduced Exhibits 137 and 138, which include an FAA Malfunction or Defect Report and cover letter involving a float assembly. At trial, the plaintiffs' expert, Mr. Sommer, testified that the Malfunction or Defect Report is filled out by mechanics in the field when they find something they consider to be a flight safety item that would be useful to get into the hands of the public. The FAA collects the forms and sends them on to the manufacturers and uses them to make judgments in regards to whether they have a safety problem. The Malfunction or Defect Report contained in Exhibit 137 was submitted by a General Aviation District Office of the FAA, meaning that an FAA inspector had found a problem that he was reporting. It involved a Cessna 150L, an O-200A Continental engine, and the MA-3SPA carburetor. The total time of usage of the carburetor parts was 323 hours; the carburetor in the plaintiffs' *1027 plane had 296 hours. The document reported:
Engine loss RPM from 2750 to 1300 following takeoff. Emergency landing made without damage to aircraft or occupants. Carburetor removed from engine and disassembled. Float lever assembly, Part Number 30-159, is found hung up in inlet valve. In closed position, no identification could be ascertained as to the actual cause on the bench. No binding of the float or the body and unable to repeat the condition. Recommend change of these units to the old-type float and valve assembly and float valve clip. New type, since 1970, float lever assembly and float valve clip a very cheap assembly. This wire clip appears easily bent and/or coned. Caused a hangup, even though we were unable to duplicate the condition on the bench.
This is the same type of failure involved in the instant case.
Exhibit 138 was the letter accompanying the above Defect Report that was sent to Teledyne. It asked that Teledyne follow the investigation through Marvel-Schebler, the predecessor to Precision, and advise the FAA of its comments on the cause of the malfunction and possible corrective action. Mr. Sommer testified that he was unaware of any action Teledyne had taken in response to the letter.
Exhibits 137, 138, and 244-B were properly admitted. There were sufficient similarities between the malfunction being reported and the malfunction in the instant case for the trial court to admit the exhibits. These exhibits involved the identical engine, carburetor, and plane, and involved an in-flight failure. The trial court did not abuse its discretion in concluding that the evidence was similar enough to provide the requisite probative value to establish the threshold predicate of similarity. That evidence was admitted for the limited purpose of establishing a poor safety history of the Teledyne motor to show that Teledyne had notice of the problem with its motor. The jury was given a specific instruction that it was to be considered to establish notice only and it must be presumed that the jury followed that instruction. See Rodriguez v. Loxahatchee Groves Water Control Mgmt. Dist., 636 So.2d 1348, 1350 (Fla. 4th DCA 1994) ("Furthermore, the trial judge gave a jury instruction to the effect that other accident evidence could not be considered as proof of negligence, but only as proof of appellee's knowledge of a dangerous condition if the conditions were substantially similar. Unless there is a clear showing to the contrary, it should be presumed that the jury followed the jury instructions."), review denied, 649 So.2d 233 (Fla.1994). There is nothing to suggest that the jury considered this evidence for any other purpose or that Teledyne was unfairly prejudiced by it.
I conclude that there was more than sufficient evidence that was properly submitted to the jury to establish that Teledyne was on notice of a problem with its motor. Even if it is assumed, as the majority contends, that the evidence of prior accidents regarding Precision's carburetor was improperly admitted, that error concerned Precision and the claims filed against Precision. Even if it is further assumed that the error did affect Teledyne, and I firmly believe that it did not, then the error was harmless. There is no way that it can reasonably be concluded that but for that evidence, a different verdict would have been rendered as to Teledyne.
Finally, I turn to the allegedly improper comments made by the plaintiffs' counsel that prompted the trial court to grant a new trial. Clearly, those comments were *1028 not improper in light of the punitive damage claim lodged against Precision. However, that issue is mooted by virtue of the majority's decision to reverse on the basis of the similar accident evidence, so I will not discuss it any further. I believe that the order entered by the trial court granting a new trial should be reversed and judgment entered in accordance with the verdict rendered by the jury in favor of Teledyne.
NOTES
[1] See U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd., 582 F.3d 1131, 1147-48 (10th Cir.2009); Wheeler v. John Deere Co., 862 F.2d 1404, 1407-08 (10th Cir.1988) ("Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury. The requirement is relaxed, however, when the evidence of other accidents is submitted to prove notice or awareness of the potential defect."); see also Lawrence v. Fla. E. Coast Ry. Co., 346 So.2d 1012, 1015 (Fla. 1977) ("However, Mrs. Lawrence argues that the evidence was not introduced for the purpose of showing that the King's Street crossing was dangerous, but rather for the purpose of showing that the Railroad had notice that the signal system was not operating properly. The record supports her argument. It appears the District Court confused the rule governing prior similar accidents with the rule governing admission of evidence of notice of defective appliances.").
[2] See Ry. Express Agency, Inc. v. Fulmer, 227 So.2d 870, 873 (Fla.1969); Hogan v. Gable, 30 So.3d 573, 575 (Fla. 1st DCA 2010); Jackson v. H.L. Bouton Co., 630 So.2d 1173, 1176 (Fla. 1st DCA 1994); Lasar Mfg. Co. v. Bachanov, 436 So.2d 236 (Fla. 3d DCA 1983); Warn Indus. v. Geist, 343 So.2d 44 (Fla. 3d DCA 1977); see also Ford Motor Co. v. Hall-Edwards, 971 So.2d 854, 860 (Fla. 3d DCA 2007).
[3] See also Hogan; Hall-Edwards; Stephenson v. Cobb, 763 So.2d 1195, 1196 (Fla. 4th DCA 2000) (quoting Lawrence, 346 So.2d at 1015); Jackson.