[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16593
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00023-WTM-GRS

CYNTHIA DYCHES LINTHICUM,
CHRISTOPHER MARTIN LINTHICUM
Natural Parents of Redacted, Deceased,
as Assignees of Bobby James Hopkins, II,

Plaintiffs-Appellants,

versus

MENDAKOTA INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(May 3, 2017)

Before MARCUS, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

Cynthia and Christopher Linthicum appeal the summary judgment in favor of Mendakota Insurance Company, which issued an automobile liability insurance policy to Bobby James Hopkins II that was in effect when he struck and killed the Linthicums' 11-year-old son. The Linthicums, as Hopkins's assignees, sued Mendakota Insurance for its alleged bad faith in failing to accept a time-limited offer to settle their wrongful death claim for the limits of Hopkins's insurance policy. The district court ruled that Mendakota Insurance did not act in bad faith because the offer left unresolved a potential claim for the child's pain and suffering. We affirm.

## I. BACKGROUND

Hopkins's wife reported the accident to Mendakota Insurance, who assigned the case to an adjuster, Kate Moulton. Moulton, with approval from her supervisor, set a pending reserve for the maximum amount of Hopkins's policy, $25,000, and recorded that liability was "probable." Moulton notified Hopkins of his potential liability for any amounts in excess of his policy limits.

The accident involved, in the words of the Linthicums' expert witness, "bad facts." Hopkins, who was driving while intoxicated, struck the Linthicums' son while he was crossing the street with his older brother, fled the scene, and took his car to a body shop for repair. According to the Linthicums, their son lived "under an hour" after the accident.

2

The Linthicums' retained an attorney, Tom Bordeaux, who sent a letter of representation to Mendakota Insurance. On July 25, 2008, Moulton called Bordeaux who, Moulton recorded, "stated he [had] other avenues to pursue re[garding] ins[urance] (IE dram shop), so [he was] not . . . ready to accept [Hopkins's policy] limits quite yet" and would "be filing [a] claim on [the brother's] behalf." Bordeaux's notes of the conversation stated that he would "at some point . . . be making a demand for the policy limits but . . . [was] waiting to see about the criminal action."

On August 7, 2008, Moulton mailed Bordeaux a letter that disclosed the limits of liability and contained a copy of Hopkins's insurance policy. On September 29, 2008, Moulton called Bordeaux and left a voice message, but he did not return the call.

On October 8, 2008, Moulton called Bordeaux. Moulton recorded that Bordeaux agreed to review and "sign [a] limited release." Bordeaux's notes reflected that he had asked "whether this is simply going to be a matter of [him] writing a letter and them sending the checks in these claims (plural) and [Moulton] said yes"; that he inquired if he "could settle [the child's] case—which is both a wrongful death claim and an estate claim—without getting the estate probated"; and that he "need[ed] to think this through thoroughly . . . [to] make sure that we're

not sliding one claim over the other" or "just end up paying the funeral home and the hospital."

The next day, Moulton sent Bordeaux a letter by facsimile that tendered the limits of Hopkins's policy "to settle the case of Cynthia and Christopher Linthicum, Natural Parents of . . ., A Minor, Deceased." Moulton also sent a release for the parents to sign.

Moulton remained in contact with Bordeaux. According to Moulton's notes, she spoke with Bordeaux on January 21, 2009, and he said that the "case is 'on hold' pending the criminal prosecution" and he "[had] no info on [a] trial date." Moulton left messages on Bordeaux's voice mail on March 17, June 22, and August 12. On August 27, 2009, Moulton spoke with Bordeaux's assistant, who stated that Hopkins's trial had been continued and that Bordeaux "[would] not be able to conclude matters pending [the] outcome of . . . trial." Moulton also spoke with Bordeaux's assistant on December 4, 2009, who stated that the trial date "[had] been pushed out further" to "sometime in [20]10."

On May 12, 2010, Bordeaux mailed Moulton a letter "demand[ing] the limits of [the] policy . . . [for] $25,000.00, in full and final settlement of [the Linthicums'] claims for the wrongful death of their child" in exchange for the "execut[ion of] a full release of . . . all claims for the wrongful death . . . ." Bordeaux demanded notice, "in writing, by 5 p.m. EDT on May 24, 2010, of . . .

4

acceptance," or the offer would be "automatically withdrawn as of that time" and a "suit [filed] against Mr. Hopkins." Mendakota Insurance received the letter on May 17, 2010. Moulton did not respond to the offer.

On June 15, 2010, Moulton received a copy of the Linthicums' complaint, which sought damages for the wrongful death of their son. Moulton called Bordeaux and told his assistant that Mendakota Insurance had already tendered the policy limits for the claim.

On June 16, 2010, Bordeaux mailed Moulton a letter that stated she had failed to respond to the "very specific proposal to settle" and, in the meantime, "the two year statute of limitations [had expired] on the wrongful death claim." Bordeaux acknowledged that Moulton had "some 20 months ago" offered to "settle significantly more than the wrongful death claim" because the release included "any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of actions" belonging to the Linthicums for "*all* personal injury, disability, property damage, loss or damages of any kind" and "demanded indemnification as to 'any additional sum of money . . . pa[id] on account of the injuries to'" their son. The "letter of May 12, 2010," Bordeaux explained, "proposed to settle the wrongful death claims only."

The Linthicums agreed to settle the wrongful death action for $1.2 million, and in exchange Hopkins assigned to the Linthicums any claim that he might have

against Mendakota Insurance. The insurance company paid the Linthicums the limits of Hopkins's insurance policy.

The Linthicums filed a complaint in a Georgia court that Mendakota Insurance was liable for "negligently, carelessly, unreasonably, foolishly, stubbornly, litigiously, or in bad faith failing or refusing to settle [their] claim for the wrongful death of their child within the applicable limits of [Hopkins's insurance] policy." The company removed the action to district court and moved for summary judgment. The Linthicums moved for partial summary judgment.

The district court granted the motion of Mendakota Insurance and denied the Linthicums' motion. The district court ruled that the company did not act in bad faith because the Linthicums' "counter-offer to accept the policy limits in exchange for settling only [their] claim for wrongful death" would not "fully settle [their] claims against Mr. Hopkins." The counter-offer, the district court determined, exposed Hopkins to potential liability for the child's pain and suffering.

## II. STANDARD OF REVIEW

We review a summary judgment *de novo*. *Mesa v. Clarendon Nat'l Ins. Co.*, 799 F.3d 1353, 1358 (11th Cir. 2015). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III. DISCUSSION

The Linthicums argue that the district court erroneously "relied on a possible pain and suffering claim for a non-existent estate in ruling that Mendakota had no duty to respond to an offer to settle the wrongful death claim only." That "created a new type of 'safe harbor' for automobile liability insurance companies," which the Linthicums argue, "conflicts with existing Georgia law." They contend that Mendakota Insurance "ignored a reasonable opportunity to settle" and, by so doing, "violated its fiduciary duty to its insured." These arguments fail.

Under Georgia law, which the parties agree applies, "[a]n insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits." *Cotton States Mut. Ins. Co. v. Brightman*, 580 S.E.2d 519, 521 (Ga. 2003). With respect to settlement, an insurer must give its "insured the same faithful consideration it gives its own interest," *S. Gen. Ins. Co. v. Holt*, 416 S.E.2d 274, 276 (Ga. 1992), and "must use such care as would have been used by an ordinarily prudent insurer with no policy limit applicable to the claim," *Baker v. Huff*, 747 S.E.2d 1, 6 (Ga. Ct. App. 2013) (quoting *U.S. Fid. & Guar. Co. v. Evans*, 156 S.E.2d 809, 811 (Ga. Ct. App. 1967)). For that reason, "[a]n insurer has no affirmative duty to engage in negotiations concerning a settlement demand that is

7

in excess of the insurance policy's limits." *Id.* (internal quotation marks and citation omitted).

An insurer is not liable for failing to respond to a time-sensitive offer to settle for policy limits when the offer does not resolve fully the claim against its insured. *Id.* at 7. In *Baker*, a passenger injured during a car accident mailed Liberty Mutual Insurance Company a letter in which he offered to settle, within ten days, all his damages for bodily injury and to provide a full release in exchange for the $100,000 available on its insured's automobile liability insurance policy. *Id.* at 5. Six days later, the passenger mailed Liberty Mutual a package containing a copy of his first letter and a second letter stating that he was "willing to accept $100,000 to compensate him for his pain and suffering only" and that the "release should indicate that the amount tendered is meant to partially compensate him for his pain and suffering." *Id.* That second letter, the *Baker* court stated, "constituted a new offer . . . for a partial settlement of pain and suffering" and required "negotiations to fully settle the claim, which included additional damages for medical expenses and lost wages." *Id.* at 7. Because the second letter "was not an offer to fully settle a claim within the policy limits to which Liberty Mutual had a duty to respond," the insurer was "entitled to summary judgment" against its insured's complaint that it acted negligently or in bad faith in failing to accept the "settlement offers made in the [two] letters." *Id.*

8

Mendakota Insurance did not act negligently or in bad faith for failing to accept the Linthicums' offer to settle. Early in the negotiation process, the Linthicums' attorney told the insurance adjuster that the "case . . . [involved] both a wrongful death claim and an estate claim." Later, the Linthicums made a "demand [for] the limits of [the] policy . . . in full and final settlement of their claims for the wrongful death of their child" and offered to "execute a full release of . . . all claims for the wrongful death." That "was not an offer to fully settle a claim within the policy limits to which [Mendakota Insurance] had a duty to respond," *Baker*, 747 S.E.2d at 7, because the offer left unresolved the "estate claim" that the Linthicums had identified as a potential basis for recovery. And the Linthicums acknowledged in their June 16, 2010, letter to Mendakota Insurance that the offer "proposed to settle the wrongful death claims only." Like the insurer in *Baker*, Mendakota Insurance "had no duty to engage in negotiations concerning a settlement demand that [was] in excess of the insurance policy's limits." *Id.* (internal quotation marks and citation omitted).

The Linthicums contend that their offer was for full settlement because they "presented no estate claim," but that cause of action potentially was available to them. "When a person's death is the result of negligent conduct by another, and . . . the decedent consciously experienced pain and suffering as a result of the negligence, Georgia law provides a method for the recovery of wrongful death

9

damages and . . . for the separate recovery of damages for the decedent's pre-death pain and suffering." *Carroll Fulmer Logistics Corp. v. Hines*, 710 S.E.2d 888, 890 (Ga. Ct. App. 2011). A family member can sue, as a survivor, for the decedent's wrongful death under the Georgia Wrongful Death Act, Ga. Code Ann. § 51-4-1 *et seq.*, and, as the administrator of the decedent's estate, for the pain and suffering that the decedent experienced before his death, Ga. Code Ann. § 9-2-41. *See Carroll Fulmer Logistics*, 710 S.E.2d at 891. That a family member is "in his individual capacity and in his capacity as administrator . . . legally different persons," *Smith v. Mem'l Med. Ctr., Inc.*, 430 S.E.2d 57, 59 (Ga. Ct. App. 1993), does not bar him from serving in both capacities. The Linthicums undeniably, as they argue, had "the right to decide what claim they [would] present and what claim they [would] not present." Even so, the possibility existed that they could sue both for the wrongful death of their child and for his pain and suffering. *See Chrysler Grp., LLC v. Walden*, 792 S.E.2d 754, 769 (Ga. Ct. App. 2016) (affirming awards to parents for wrongful death and for pain and suffering as administrators of child's estate); *Volkswagen of Am., Inc. v. Gentry*, 564 S.E.2d 733 (Ga. Ct. App. 2002) (same).

The Linthicums argue that Mendakota Insurance knew "the only claim they held against Hopkins was a wrongful death claim," but we disagree. The Linthicums also identified an "estate claim" as a potential basis to collect damages.

10

Mendakota Insurance should have known they were not pursuing an estate claim, the Linthicums argue, because they did not "form" an estate or seek appointment as its representatives, but their attorney inquired if they could collect the "estate claim" without having "the estate probated." In their letter dated June 16, 2010, the Linthicums stated that they declined the tender of the policy limits by Mendakota Insurance because that sought to "settle significantly more than the wrongful death claim" and their offer "proposed to settle the wrongful death claims only." The Linthicums also stated in their answers to interrogatories that the terms of the offer Mendakota Insurance made to settle for policy limits was "unacceptable" because it "was not only for the wrongful death claim, but for other claims that it was premature to release."

The district court did not err by entering summary judgment in favor of Mendakota Insurance and denying the Linthicums' motion. The Linthicums told the insurer that they had "a wrongful death claim and an estate claim" and rejected the insurer's offer to resolve the matter for policy limits. Mendakota Insurance was not obligated to accept the Linthicums' offer to settle only the "wrongful death claim" or to continue negotiations because the offer would have exceeded the policy limits.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Mendakota Insurance.

11